[L. A. No. 21757.   In Bank.   Mar. 10, 1953.]

HERMAN C. SOMMER, Respondent, v. METAL TRADES
COUNCIL OF SOUTHERN CALIFORNIA et al., Appellants.

Arthur Garrett, John C. Stevenson, Todd & Todd and Clarence E. Todd for Appellants.

Charles P. Scully and Tobriner & Lazarus as Amici Curiae on behalf of Appellants.

Gibson, Dunn & Crutcher, William French Smith, James R. Hutter and C. Robert Simpson, Jr., for Respondent.

Roth & Bahrs as Amici Curiae on behalf of Respondent.

SHENK, J.—This is an appeal by the defendants from an order granting a preliminary injunction.

The controversy involves concerted union activities which bring into question the application of the Jurisdictional Strike Act of this state (§ 1115 et seq., Labor Code added

by Stats. 1947, p. 2592). The constitutional validity of that statute has been determined in *Seven Up Bottling Co. v. Grocery Drivers Union,* L. A. No. 21347 (*ante,* p. 368 [254 P.2d 544]). The question is whether the state court had jurisdiction to order the preliminary injunction and, if it had jurisdiction whether it properly exercised its discretion in directing that it should issue.

For 31 years the plaintiff has manufactured, distributed and installed auto service stations and equipment. He employs 50 persons. The defendant unions are affiliated with the American Federation of Labor. The individual defendants are members and officers of the unions.

Prior to July, 1949, the plaintiff's employees were unorganized. In that month the defendants demanded of the plaintiff that he recognize the unions as the exclusive collective bargaining representatives of the employees, and that only members of the unions be employed by him. In September the employees held meetings to organize The Workers Association of Manufacturers and Builders of Auto Service Union Local No. 1, without A. F. of L. or other union affiliation, and demanded that the employer recognize it as their exclusive bargaining representative. The plaintiff refused to recognize either Local No. 1 or the unions as the employees' collective bargaining agent. Peaceful picketing and secondary boycott activities, including the representation that the plaintiff was unfair to organized labor, were commenced by the defendants on September 15, 1949.

Also in September the employees' Local filed a petition with the National Labor Relations Board for certification as the representative for collective bargaining purposes. The unions intervened and contested for recognition. On February 24, 1950, the National Board found that the plaintiff was engaged in commerce within the meaning of the federal labor relations law and ordered an election. The plaintiff alleges that an election was conducted by the Local; that 25 employees voted for the Local, seven of which votes were challenged by the defendants, and that five employees voted for the unions. It does not appear whether the election was pursuant to the board's direction or whether certification of a collective bargaining representative followed.

The defendants continued their concerted activities and the plaintiff commenced this action for injunctive relief and damages in March, 1950. A hearing on the return to an order to show cause was had on the verified complaint and

numerous affidavits. The court granted the preliminary injunction enjoining the defendants from conducting the picketing and secondary boycott activities and from representing to others that the plaintiff is unfair to organized labor.

The plaintiff's employees are not on strike. The dispute is between the two groups concerning union organization of the plaintiff's employees, collective bargaining representation and consequent work assignment. It is not questioned that the union picketing and secondary boycott activities substantially interfered with the conduct of the plaintiff's business.

The plaintiff contends that the concerted union activity presents a case of a jurisdictional strike which is in violation of and enjoinable pursuant to the Jurisdictional Strike Act of which the state court has jurisdiction. The defendants contend that their activity is not in violation of the act and in any event is governable solely pursuant to the federal law.

Section 1115 of the Labor Code declares a jurisdictional strike to be against the public policy of the state and unlawful. Section 1116 provides the remedies by injunction and damages. "Labor organization" is defined as any organization or any agency or employee representation committee or any local unit thereof in which employees participate which exists for the purpose of dealing with employers concerning grievances and labor disputes and is not found to be financed, interfered with, dominated or controlled by the employer (§ 1117). Section 1118 defines "jurisdictional strike" as a "concerted refusal to perform work for an employer or any other concerted interference with an employer's operation or business, arising out of a controversy between two or more labor organizations as to which of them has or should have the exclusive right to bargain collectively with an employer on behalf of his employees or any of them, or arising out of a controversy between two or more labor organizations as to which of them has or should have the exclusive right to have its members perform work for an employer." Section 1119 preserves, subject to the foregoing restrictions, the right of collective bargaining and the right of any individual voluntarily to become or remain a member of a labor organization or personally to request any other individual to join a labor organization.

A policy prohibiting concerted jurisdictional activity is also contained in the federal law. Section 8(b)(4) of the

amended Wagner Act (National Labor Relations Act, July 5, 1935, 49 Stats. 452, ch. 372, 29 U.S.C.A. § 158, as amended by the Labor Management Relations Act, 1947, 61 Stats. 140) specifies concerted jurisdictional activities which are declared to be unfair labor practices on the part of labor organizations, and section 303(a) of the amended act declares the conduct to be unlawful. (See discussion Teller, Labor Disputes and Collective Bargaining, 1950 Supplement, p. 111 et seq., p. 121 et seq.) For present purposes it is sufficient to note that section 8(b)(4)(C) declares it to be an unfair labor practice for a labor organization to engage in concerted activity (as here) for the purpose of forcing or requiring the employer to recognize or bargain with a particular labor organization as the representative of his employees if another labor organization has been certified as their representative under the provisions of the act.

The preliminary injunction was ordered in May, 1950. The trial court appears not to have been informed as to any finality in the representation proceeding before the National Labor Relations Board. For the purpose of this appeal it is assumed that the plaintiff is engaged in interstate commerce and that there is no certification of a collective bargaining representative for his employees under the federal act. In the representation proceeding the unions sought to introduce evidence of employer domination of the Local, but the evidence was refused consideration because the issue was not subject to litigation in that proceeding. Subsequently the unions filed charges of employer coercion and domination of the Local in violation of sections 8(a)(1) and (2) of the federal act. In December, 1949, the evidence of domination was held to be insufficient to warrant investigation at that time. On September 22d and December 5, 1949, the employer filed with the National Board charges of union jurisdictional activity in violation of section 8(b)(4) of the act. On December 28th the charges were dismissed for lack of evidence of violation at that time. It does not appear that the charges were renewed after a possible certification of the employees' Local as their representative for collective bargaining purposes.

It may also be assumed that the evidence which was relevant in the representation contest and to the several charges of unfair labor practices before the National Board bears on the issues here. But it does not follow that the state court does not have jurisdiction of this controversy.

*Gerry of California* v. *Superior Court* (June, 1948), 32 Cal.2d 119 [194 P.2d 689], does not determine with finality the matter of jurisdiction on this appeal. The Gerry case involved interstate commerce but was not concerned with union jurisdictional activity as defined in our statute. Secondary boycott activities were there employed by A.F. of L. unions for the purpose of organizing the petitioner's non-union employees. In view of the fact that the court in *In re Blaney,* 30 Cal.2d 643 [184 P.2d 892], had held invalid the hot cargo and secondary boycott act of 1941, the petitioner agreed that there was no California statute which could furnish equitable redress. The petitioner contended that the state had concurrent jurisdiction with the National Labor Relations Board to enforce the provisions of the federal act. The decision rejecting the contention was a determination that in the absence of a valid applicable local statute affording relief, facts which amount to unfair labor practices under the federal act are cognizable exclusively in a proceeding before the National Board. This court in *In re DeSilva,* 33 Cal.2d 76, 78 [199 P.2d 6], again recognized that the Gerry case involved the question of the concurrent jurisdiction of the state court to enforce the federal act. Thus the problem now is not whether the state has concurrent jurisdiction with the National Board to enforce the federal act. The question is whether the state court has jurisdiction to enforce the provisions of a state statute making the defined union jurisdictional activity unlawful and subject to restraint.

At the time of the decision in the Gerry case, *Bethlehem Steel Co.* v. *New York State Labor Relations Board* (April, 1947), 330 U.S. 767 [67 S.Ct. 1026, 91 L.Ed. 1234], was the latest holding of the Supreme Court that except where jurisdiction had been ceded by the National Board to a state agency, state and federal action in matters covered by the federal act could not coexist. The Supreme Court has since recognized the validity of state action in those cases where the conduct complained of is neither forbidden nor legalized and approved under the federal act.

The Bethlehem Steel formula was followed in *La Crosse Tel. Corp.* v. *Wisconsin Emp. Relations Board* (Jan., 1949), 336 U.S. 18 [69 S.Ct. 379, 93 L.Ed. 463], where cession had not been granted. The jurisdiction of the local board in a certification procedure was denied because of inconsistencies between the federal and the state acts. The court said at

page 26: "A certification by a state board under a different or conflicting theory of representation may therefore be as readily disruptive of the practice under the federal act as if the orders of the two boards made a head-on collision. These are the very real potentials of conflict which lead us to allow supremacy to the federal scheme even though it has not yet been applied in any formal way to this particular employer."

The state power to set the limits of permissible contest available to industrial combatants, so long as constitutional guaranties are observed, is not open to question. (*Senn* v. *Tile Layers Protective Union,* 301 U.S. 468 [57 S.Ct. 857, 81 L.Ed. 1229] ; *Thornhill* v. *Alabama,* 310 U.S. 88, 103 [60 S.Ct. 736, 84 L.Ed. 1093].) *International Union* v. *Wisconsin Emp. Relations Board* (Feb., 1949), 336 U.S. 245 [69 S.Ct. 516, 93 L.Ed. 651], again recognized the area of control open to the state (see numerous cases cited at p. 257; *cf. Giboney* v. *Empire Storage & Ice Co.,* 336 U.S. 490 [69 S.Ct. 684, 93 L.Ed. 834] ; see, also, *Gerry of California* v. *Superior Court, supra,* 32 Cal.2d at p. 125 and cases cited). There the local board ordered the union to cease intermittent unannounced work stoppages for unstated purposes and other concerted activity except by leaving the premises in an orderly manner for the purpose of exercising the protected right of going on strike. The Supreme Court pointed out that the enjoined activity was neither forbidden nor protected by the federal act.

*Algoma Plywood & Veneer Co.* v. *Wisconsin Emp. Relations Board* (Mar., 1949), 336 U.S. 301 [69 S.Ct. 584, 93 L.Ed. 691], concerned a Wisconsin law which provided for a maintenance-of-membership clause in the labor contract when a two-thirds employee vote favored the inclusion in a referendum conducted by the Wisconsin board. No referendum had been conducted under the state or federal act, but in January, 1947, an employee was discharged pursuant to such a clause in the current labor contract. The state court sustained the jurisdiction of the local board in the issuance of a cease and desist order to the employer including a direction for reinstatement and back pay. With the less restrictive conditions in the federal act the Supreme Court found no conflict between it and the state act on the subject of union security maintenance. In affirming the state judgment, the court reviewing the legislative history and debate and concluded that Congress did not intend to interfere with state action on the subject. Cession was deemed essential only

where the state and federal laws were parallel. Where there was no overlapping, cession was said to be unnecessary because the state's jurisdiction remains unimpaired. The court also recognized the impact of the 1947 amendments to require a modification of the Bethlehem Steel decision in cases where the National Board had declined jurisdiction, in order to permit freedom of state action including pursuit of the more restrictive state policies. The modification was held to apply so long as Congress did not manifest an unambiguous intention to vest exclusive jurisdiction in the National Board, and the state policy was not inconsistent with national policy.

*Plankinton Packing Co.* v. *Wisconsin Emp. Relations Board* (Feb., 1950), 338 U.S. 953 [70 S.Ct. 491, 94 L.Ed. 588], also involved the maintenance of union membership. On December 6, 1946, the local board ordered the reemployment of employee Stokes who on May 9, 1945, had been discharged for failure to maintain his union membership. The state court determined that the local board had jurisdiction on the authority of the Algoma Plywood decision. The Supreme Court reversed without opinion citing Bethlehem Steel and La Crosse. But it cannot be assumed that the Supreme Court intended to overrule the Algoma Plywood declarations. It must on the contrary be assumed that the facts in Plankinton would disclose a federally protected union maintenance clause which would form the basis of the implied conclusion of absence of state jurisdiction.

*International Union Etc. A. & A. I. W.* v. *O'Brien* (May, 1950), 339 U.S. 454 [70 S.Ct. 781, 94 L.Ed. 978], involved a strike vote provision of the Michigan labor mediation law. It was held that since this was a protected and regulated right in a field occupied by Congress it was closed to state regulation under a statute which conflicted with the exercise of federally protected labor rights. The court recognized that in *International Union* v. *Wisconsin Emp. Relations Board, supra* (336 U.S. 245, 252), it had reaffirmed the principle that if "Congress has protected the union conduct which the State has forbidden . . . the state legislation must yield" (339 U.S. at p. 459).

It is thus apparent that the factors of protection and condemnation under the federal act largely determine whether the area is one closed to state control. The decisions indicate that the presence of those factors are deemed to disclose an intention on the part of Congress to place exclusive jurisdic-

tion in the National Board. They also demonstrate that the problem is not one which in every case is resolved solely by looking to the provisions of the federal act; but that if the subject matter of the local statute is otherwise one within the area of permissible exercise of state power in the maintenance of industrial peace, and state policy is consistent with federal policy, the state does not necessarily encroach upon the area of control vested in the National Board. And in some cases it is seen that the presence or absence of the factors of protection or condemnation under the federal act may be resolved by the fact of whether the National Board has or has not assumed jurisdiction.

The extent to which the organizational coercive measures are lawful is not involved at this time. It is sufficient to note that the statutory restrictions on jurisdictional strike activity are consistent with the federal policy enacted in 1947 defining as an unfair labor practice activity by a union which seeks to substitute itself as the collective bargaining agent in the place of one duly selected by the employees. There is here therefore no conflict with federal policy such as was considered fatal in *Amalgamated Assn.* v. *Wisconsin Emp. Relations Board* (Feb. 1951), 340 U.S. 383 [71 S.Ct. 359, 95 L. Ed. 364], in connection with a statute outlawing all strike activity on the part of public utility employees and substituting arbitration in the settlement of disputes. It was there pointed out that the activity forbidden by the Wisconsin law was one protected under the federal law.

■ If the union activity here involved is not protected under the federal act it is not immunized from state action. The union concerted activity was not protected under the federal act if another union was certified by the national board as the collective bargaining representative of the plaintiff's employees. ■ And in the absence of such certification there is no immunity under the state law if the employees' Local constitutes a collective bargaining representative within the meaning of the jurisdictional strike provisions. (*cf. Park & Tilford I. Corp.* v. *International etc. of Teamsters* (Jan., 1946), 27 Cal.2d 599, 603, 604 [165 P.2d 891, 162 A.L.R. 1426].) ■ Since the certification of a union other than the defendant is not shown, a case of condemnation of the union activity under the federal act is not presented. And as it does not appear that the National Board has seen fit to act finally in either the representation or the

unfair charges proceedings there is involved a possible area of activity which is neither protected nor condemned under the federal act, and pursuant to the foregoing decisions is subject to state action under the anti-jurisdictional strike provisions of the Labor Code.

Thus, there is here an area open to the state for the exercise of its police power. ■ The state policy of outlawing jurisdictional coercive activity in the maintenance of peaceful industrial relations justifies the injunctive as well as legal relief. ■ The provisions of section 303 (b) of the amended federal act confining the action which may be brought in the state courts to that for recovery of damages to business or property are concerned with state jurisdiction in matters covered by that act. They do not preclude local injunctive relief in an area open to state control.

■ In view of the many decisions recognizing the constitutional right of states to proscribe picketing in the furtherance of unlawful objectives (*Giboney* v. *Empire Storage & Ice Co., supra,* 336 U.S. 490, 502-503, citing *Bakery & P. Drivers & H., I. B. T.* v. *Wohl,* 315 U.S. 769, 776-777 [62 S.Ct. 816, 86 L.Ed. 1178] ; *Hughes* v. *Superior Court,* 339 U.S. 460, 464 [70 S.Ct. 718, 94 L.Ed. 985] ; *International Brotherhood C. W. & H. Union* v. *Hanke,* 339 U.S. 470, 474 [70 S.Ct. 773, 94 L.Ed. 995, 13 A.L.R.2d 631] ; *Building Service Emp. Intl. Union* v. *Gazzam,* 339 U.S. 532, 537 [70 S.Ct. 784, 94 L.Ed. 1045] citing numerous cases; *International Etc. Electrical Workers* v. *National Labor Relations Board* (June, 1951), 341 U.S. 694, 705 [71 S.Ct. 954, 95 L.Ed. 1299] ; see, also, *James* v. *Marinship Corp.,* 25 Cal.2d 721, 729-730 [155 P.2d 329, 160 A.L.R. 900] and cases cited; *Rubin* v. *American Sportsmen Television Eq. Soc.,* L. A. No. 21803, *post,* p. 412 [254 P.2d 510]), it may not successfully be contended that the defendant unions have the right to publicize the present controversy by means of placards and picketing if the objective is shown to be in violation of the Jurisdictional Strike Act. As said in the Hughes case at page 464, the ''Constitution does not demand that the element of communication in picketing prevail over the mischief furthered by its use in these situations''; and in the Hanke case at page 474, that ''while picketing has an ingredient of communication it cannot dogmatically be equated with the constitutionally protected freedom of speech. . . . The effort in the cases has been to strike a balance between the constitutional protection of the element of com-

munication in picketing and 'the power of the State to set the limits of permissible contest open to industrial combatants.' "

In *Gerry of California* v. *Superior Court, supra,* 32 Cal.2d 119, there was an attempt by the petitioner's employees to form their own organization for collective bargaining purposes and an unsuccessful attempt to obtain certification under the federal act. The events took place in November, 1947, after the effective dates of the Labor Management Relations Act, 1947 (August), and of the state Jurisdictional Strike Act (September, 1947). In that case apparently neither coun-. sel nor court considered that the effort to form a local unaffiliated organization of the nonunion employees constituted a labor organization within the meaning of section 1117 of the Labor Code. Consequently the petitioner's employees were treated as unorganized for the purpose of the decision in that case.

The controversy here presents for the first time the question whether a somewhat similar attempt effects a labor organization within the meaning of the statute. ■■■ At this point it may not be seriously questioned that such a local unit, if qualified and undominated by the employer, may constitute a labor organization for collective bargaining purposes. That it may is clearly indicated by the language of the statute. That effect was also impliedly determined by the order of the National Board in the representation proceeding and in the dismissal of the charges based on alleged employer domination. ■■■ But here the factual elements which would support the granting of an injunction cannot be finally resolved until a trial on the merits. In the meantime the trial court was justified in maintaining the status quo until it should decide the questions of the lawfulness of the union activity and the propriety of issuing a permanent injunction. The requirements of qualification and voluntary character of the employees' organization are preliminarily met by the prima facie showing in the complaint and the affidavits, and thereby the trial court's jurisdiction to order the temporary relief is established. On the application for the preliminary order the court also could, and undoubtedly did, weigh the probable injury which would ensue to the plaintiff by denying the temporary relief as against the absence of probable injury which would accrue to the defendants by granting it. The record does not indicate that the court abused its discretionary power in making these determinations adversely to the

defendants and in granting the injunctive order pending a trial on the merits.

The order is affirmed.

Edmonds, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I dissent.

*The majority opinion concedes that the activities of defendants unions and Local 1 and its effect on plaintiff employer are within the jurisdiction of the National Labor Relations Board and the terms of the Labor Management Relations Act of 1947* (29 U.S.C.A., § 141 et seq.) and obviously that is true. It goes on to hold, however, that such activities are also within the purview of our statute known as the Jurisdictional Strike Act. (Lab. Code, § 1115 et seq.) It then concludes that the state act and state courts in enforcing it *can operate concurrently on those activities.* It attempts to distinguish *Gerry of California* v. *Superior Court,* 32 Cal.2d 119 [194 P.2d 689] and *In re DeSilva,* 33 Cal.2d 76 [199 P.2d 6], on the ground that in those cases there was no state statute or policy which regulated the activity. That, however, is immaterial for those cases further state that where the activity comes within the federal act, *exclusive* jurisdiction is conferred on the board under that act. That exclusive jurisdiction does not disappear merely because the state passes a statute on the same subject.

The fundamental premise of the majority opinion, that activities in connection with labor disputes although within the jurisdiction of the federal law and national board, may also be regulated and controlled by state statutes and enforced by state courts, is clearly erroneous as I will endeavor to demonstrate hereinafter. First, reference should be made to the most recent case called to my attention, of *Capital Service, Inc.* v. *National Labor Relations Board,*\* where the premise of the majority opinion is squarely repudiated. There the federal district court had granted, at the request of the National Labor Relations Board, an injunction against an employer enjoining it from enforcing an injunction it had obtained in a California superior court enjoining concerted activities (a boycott and picketing) by a union. The federal court held that the activities violated the federal law and hence the *California court had no jurisdiction* to enjoin

---

\*A rehearing was granted.

the activities and the district court was correct in so holding. The court stated:

"The question then arises whether, since both these acts of picketing are in violation of the Taft-Hartley Act, the state courts are excluded from attempting to enjoin such acts where prohibited *by the State* or federal law?

"We think that the control by the federal tribunals is exclusive. 29 U.S.C.A. § 160(a) of the original Act provided: 'The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 158) affecting commerce. This power *shall be exclusive and* shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, code, law, or otherwise.' (Emphasis supplied.)

"As amended by the Taft-Hartley Act, these two sentences remain save that the words 'shall be exclusive and' are stricken, and the states given power of enforcement by agreement with the board in certain cases by adding the following proviso after the word 'otherwise': '*Provided,* That the Board is empowered by agreement with any agency of any State or Territory to cede to such agency jurisdiction over any cases in any industry (other than mining, manufacturing, communications, and transportation except where predominantly local in character) even though such cases may involve labor disputes affecting commerce, unless the provision of the State or Territorial statute applicable to the determination of such cases by such agency is inconsistent with the corresponding provision of this subchapter or has received a construction inconsistent therewith.'

"We construe this amendment as giving to a state a right of enforcement only by an agreement reached by it with the board. Here there was no such agreement."

In the instant case it appears from the complaint that plaintiff is doing business under the fictitious name of Comwel Company in Lynwood, California. His business consists of manufacture, distribution and installation of steel machinery and equipment, chiefly for service stations. Defendants are various local labor unions affiliated with the American Federation of Labor and members and officers of those unions. Plaintiff employs about 50 people.

An organization called Workers Association of Manufacturers and Builders of Auto Service Union Local No. 1 (hereafter called Local 1), not financed or controlled by plaintiff,

organized early in September, 1949, filed on September 16, 1949, a petition with the National Labor Relations Board, claiming the right to represent plaintiff's employees in collective bargaining, in which plaintiff was a party, and one of defendant unions intervened. On February 24, 1950, the board ordered an election to determine whether the union or Local 1 should be the bargaining representative. It also determined that plaintiff was engaged in a business affecting interstate commerce. At the election a majority voted in favor of Local 1.

On September 22, 1949, plaintiff filed with the board a charge, later amended, against some of defendant unions, claiming the union was engaged in unfair labor practices affecting interstate commerce under and in violation of the Labor Management Relations Act of 1947 (29 U.S.C.A., § 158 [b] [4] [A] and [B]) in that the unions were inducing other employees of other employers to refuse to use and handle plaintiff's products, with the object of forcing other employers to bargain with a union not certified as a representative, by picketing and otherwise. Plaintiff thus admitted that interstate commerce was affected. On December 28, 1949, the regional director of the board refused to issue a complaint in the matter for "lack of sufficient evidence of violations" of the act. No appeal was taken from such refusal.

On October 28, 1949, one of defendant unions filed a charge with the board alleging unfair labor practices affecting interstate commerce in violation of the Labor Management Relations Act (29 U.S.C.A., § 158[a] [1] and [2]) in that Local 1 was formed by plaintiff to influence his employees in an election by them to determine their bargaining representative. On December 13, 1949, the regional director of the board refused to issue a complaint for lack of evidence. On appeal to the general counsel, the refusal was affirmed.

The charge in the complaint and affidavits is that defendants demanded that plaintiff accept them as the exclusive bargaining representative for his employees and to that end defendants have picketed plaintiff's place of business and his customer's places of business where plaintiff was installing his equipment and otherwise sought to induce other employers and employees to refuse to deal with plaintiff or handle his products, which practices succeeded in injuring plaintiff's business. According to plaintiff, he was approached during 1949, before Local 1 was formed, by defendants who demanded the right to be the exclusive bargainers for his employees

and to execute a contract to that end. He refused because his employees did not want to join the union. Threats of picketing and of preventing suppliers and subcontractors from working on the jobs were made by defendants. Defendants engaged in concerted action against plaintiff consisting of picketing and advising ·plaintiff's customers not to deal with him, and coercing the contractors by threatening to call off the men on their jobs if they continued to deal with plaintiff. The activity was successful, causing considerable damage to plaintiff's business. The injunction restrained the foregoing activities.

Plaintiff seeks to justify the injunction on the basis of the Jurisdictional Strike Act (Lab. Code, § 1115 et seq.) considered in *Seven Up Bottling Co.* v. *Grocery Drivers Union, ante,* p. 368 [254 P.2d 544]. Defendants claim the act is unconstitutional and that it does not apply here because their concerted activities did not arise out of a dispute between them and Local 1 (see Lab. Code, § 1118) but had been in existence prior to Local 1's formation. Plaintiff also relies upon section 923 of the Labor Code.

Beyond doubt the case is controlled exclusively by the National Labor Management Relations Act of 1947 and is within the jurisdiction of the National Labor Relations Board, and any state policy, legislative or judicial, must give way. The act sets up a comprehensive system dealing with representation in collective bargaining and unfair labor practices on the part of both management and labor organizations. Its declared policy is that industrial strife which interferes with the flow of interstate commerce can be avoided or minimized if employers, employees and labor organizations each recognize the other's legitimate rights, and the purpose of the act is to preserve the legitimate rights of employers and employees and to provide for orderly and peaceful procedures to achieve these goals. (29 U.S.C.A. § 141.) Rights are assured to employees "to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title." (*Id.,* § 157.) Certain activities on the part of the employer are de-

clared unfair labor practices, such as "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title; . . . by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: Provided, That nothing in this sub-chapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in section 158(a) of this title as an unfair labor practice) to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later, (i) if such labor organization is the representative of the employees as provided in section 159(a) of this title, in the appropriate collective-bargaining unit covered by such agreement when made; and (ii) if, following the most recent election held as provided in section 159(e) of this title the Board shall have certified that at least a majority of the employees eligible to vote in such election have voted to authorize such labor organization to make such an agreement: *Provided further,* That no employer shall justify any discrimination against an employee for nonmembership in a labor organization (a) if he has reasonable grounds for believing that such membership was not available to the employee on the same terms and conditions generally applicable to other members, or (B) if he has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership. . . ." (*Id.,* § 158 [a][1] and [3]) Similarly it is unfair practice for a labor organization to "(1) restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title: *Provided,* That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein; or (B) an employer in the selection of his representatives for the purposes of collective bargaining or the adjustment of grievances; (2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) of this section or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some

ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership; . . . (4) to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is: (A) forcing or requiring any employer or self-employed person to join any labor or employer organization or any employer or other person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person; (B) forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title; (C) forcing or requiring any employer to recognize or bargain with a particular labor organization as the representative of his employees if another labor organization has been certified as the representative of such employees under the provisions of section 159 of this title; . . . (c) The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit.'' (*Id.*, § 158 [b] [1] [2] [4] and [c].)   The board has jurisdiction to determine the proper bargaining representative on petition of employees, labor organization, or employer and for elections to that end. (*Id.*, § 159.) Also, it is given power to prevent engaging in unfair labor practices and to invoke federal court jurisdiction to that end. (*Id.*, § 160.) That jurisdiction excludes injunctive relief by the state courts. (*Gerry of California* v. *Superior Court*, 32 Cal.2d 119 [194 P.2d 689]; *In re DeSilva*, 33 Cal.2d 76 [199 P.2d 6].)

The trend of the decisions of the courts is that state regulation is not applicable either on the theory of occupation of the field of regulating strikes, picketing and boycotts by the Labor Management Relations Act of 1947, or that such concerted action falls within the protection of section 157 of the law quoted supra; that minority picketing for recognition is not subject to state regulation.   One phase of the problem

was considered by this court in *Gerry of California* v. *Superior Court, supra,* 32 Cal.2d 119, and *In re DeSilva, supra,* 33 Cal. 2d 76. In both of those cases picketing of an employer was done by a union to organize the employer's employees. An injunction was sought on the ground that the conduct consisted of an unfair labor practice under the Labor Management Relations Act, no state law being violated. It was decided in the Gerry case that there was an unfair labor practice and in the DeSilva case that was "assumed." We held that an injunction could not stand because the exclusive jurisdiction to prevent a violation of the act rested with the National Labor Relations Board. While we were primarily concerned with whether the state courts had jurisdiction to enforce a violation of the national act rather than whether a state could enforce its own labor regulation where interstate commerce was affected, we reviewed the whole field as to the place occupied by the federal law and that left to the states. We stated in the DeSilva case, summarizing the holding of the Gerry case (p. 78) : "This court there [in the Gerry case] held that the declared intent and purpose of the Labor Management Relations Act, 1947, was to vest *exclusive jurisdiction* in the National Labor Relations Board over *unfair labor practices* affecting interstate commerce and to vest in the courts generally jurisdiction only of actions for damages arising out of the commission of such practices, and that the act deprived the superior courts of original equitable jurisdiction in such cases." (Emphasis added.) In the Gerry case the holding of the United States Supreme Court in *Amalgamated U. Workers* v. *Consolidated Edison Co.,* 309 U.S. 261 [60 S. Ct. 561, 84 L.Ed. 738] was summarized: "The Supreme Court pointed out that the course of procedure was definite and restricted; that the *board and the board alone* could determine whether an employer had engaged in an unfair labor practice; that *the board was chosen as the instrument or agency, exclusive of any private person or group, to assure protection from the described unfair conduct in order to remove obstructions to interstate commerce,* and that the board alone was authorized to take proceedings to enforce its order. The *sole* authority of the *board* to secure prevention of unfair labor practices affecting commerce was thus recognized. That *section 10 of the National Labor Relations Act committed to the board the exclusive power to decide whether unfair labor practices by the employer had been engaged in*

*and to determine the action that should be taken to remove or avoid the consequences thereof was again stated. . . .* The most recent pronouncement of the Supreme Court to come to our attention is in *Bethlehem Steel Co.* v. *New York State Labor Relations Board, supra* ([330 U.S. 767, 91 L.Ed. 1234] 67 S.Ct. 1026, reversing 295 N.Y. 601 and 607 [64 N.E.2d 350]), wherein it was held that *state and federal action covering the subject matter of the National Labor Relations Act could not coexist."* (Emphasis added.) (*Gerry of California* v. *Superior Court,* 32 Cal.2d 119, 124 [194 P.2d 689].) That discussion means that in cases such as this it rests with the board to determine, at least at this stage of the proceeding, whether an unfair labor practice has been committed and to take such action as it deems advisable. This court cannot, therefore, be concerned with the question of whether in fact there have been unfair labor practices committed.

Since the DeSilva case the Supreme Court of the United States has continued in the same direction. It held in *La Crosse Tel. Corp.* v. *Wisconsin Emp. Relations Board,* 336 U.S. 18 [69 S.Ct. 379, 93 L.Ed. 463], that the federal act controlled questions relating to representation of employees. *Algoma Plywood & Veneer Co.* v. *Wisconsin Emp. Relations Board,* 336 U.S. 301 [69 S.Ct. 584, 93 L.Ed. 691], seemed to take a step backward, but in *Plankinton Packing Co.* v. *Wisconsin Emp. Relations Board,* 338 U.S. 953 [70 S.Ct. 491, 94 L.Ed. 588], the decision of the Supreme Court of Wisconsin holding that Wisconsin's labor relations law as to unfair labor practices controlled, was reversed without opinion. In *International Union of U. A., A. & A. & I. W.* v. *O'Brien,* 339 U.S. 454 [70 S.Ct. 781, 94 L.Ed. 978], a Michigan strike control law which required a prior notice and a majority vote before a strike, was held inapplicable because of the federal act, in that it attempted to limit a federal right of employees to engage in concerted activities and to strike, and that the federal act regulated such rights. The court concluded the opinion by referring to certain areas in which state action was proper, including a discussion of the cases, such as *International Union, U. A. W.* v. *Wisconsin Emp. Relations Board,* 336 U.S. 245 [69 S.Ct. 516, 93 L.Ed. 651], heavily relied upon by plaintiff and showing that the Jurisdictional Strike Law is not in the class of activity reserved for state action. The court said: *"International Union, U.A.W.* v. *Wisconsin Emp. Relations Board,* 336 U.S. 245 [69

S.Ct. 516, 93 L.Ed. 651] (1949), upon which Michigan principally relies, was not concerned with a traditional, peaceful strike for higher wages. The employees' conduct there was 'a new technique for bringing pressure upon the employer,' a 'recurrent or intermittent unannounced stoppage of work to win unstated ends.' Id. at 249, 264. That activity we regarded as 'coercive,' similar to the sit-down strike held to fall outside the protection of the federal act in *National Labor Relations Board* v. *Fansteel Metallurgical Corp.* (1939), 306 U.S. 240 [59 S.Ct. 490, 83 L.Ed. 627, 123 A.L.R. 599] (1939), and to the labor violence held to be subject to state police control in *Allen-Bradley Local* v. *Wisconsin Emp. Relations Board,* 315 U.S. 740 [62 S.Ct. 820, 86 L.Ed. 1154] (1942). In the Wisconsin Auto. Workers case, we concluded that the union tactic was 'neither forbidden by federal statute nor was it legalized and approved thereby.' 336 U.S. at 265. 'There is no existing or possible conflict or overlapping between the authority of the Federal and State Boards, because the Federal Board has no authority either to investigate, approve or forbid the union conduct in question. This conduct is governable by the State or it is entirely ungoverned.' Id. at 254. *Clearly, we reaffirmed the principle that if 'Congress has protected the union conduct which the State has forbidden . . . the state legislation must yield.'* Id. at 252.'' (Emphasis added.) (*International Union of U. A., A. & I. W.* v. *O'Brien, supra,* 339 U.S. 454, 459.) The court summarized the area still open to state action in *Allen-Bradley Local No. 1111* v. *Wisconsin Emp. Relations Board,* 315 U.S. 740 [62 S.Ct. 820, 86 L.Ed. 1154], stating that: ''[T]he state's exercise of its police power (e.g., the prevention of mass picketing of the employer's factory, threatening personal injury or property damage to employees desiring to work, obstructing entrance to and egress from the employer's factory, obstructing the streets and public roads, picketing the homes of employees, and other breaches of the peace in connection with labor disputes) was not intended to be excluded by the provisions of the National Labor Relations Act, and that the exercise of that power by the state could stand consistently with the operation of the federal act.'' (*Gerry of California* v. *Superior Court, supra,* 32 Cal.2d 119, 125.) The conduct here involved does not fall in that category. I believe it is clear that the circumstances existing here present either a case of an unfair labor practice, or that the conduct is protected by the national act (29 U.S.C.A. § 157), which ques-

tions are, in this state at least, determinable by the National Board.

The court had no jurisdiction, therefore, to grant the injunction and I would reverse the order.

Gibson, C. J., and Traynor, J., concurred.

Appellants' petition for a rehearing was denied April 2, 1953. Gibson, C. J., Carter, J., and Traynor, J., were of the opinion that the petition should be granted.