[Civ. No. 21337. Second Dist., Div. One. Mar. 1, 1956.]

G. C. BREIDERT COMPANY (a Corporation), Appellant, v. SHEET METAL WORKERS INTERNATIONAL ASSOCIATION (an Unincorporated Association) et al., Respondents.

Hill, Farrer & Burrill and Ray L. Johnson, Jr., for Appellant.

Gilbert, Nissen & Irvin, John C. Stevenson and Robert W. Gilbert for Respondents.

WHITE, P. J.—This is an action for injunction and damages brought by G. C. Breidert Company, a California corporation (hereinafter referred to as "the employer"), against Sheet Metal Workers Union and Teamsters Unions (hereinafter referred to as "the unions"), under the California Jurisdictional Strike Act (Lab. Code, §§ 1115-1120).

The complaint alleges that for some time prior to the filing of the complaint, the unions requested the exclusive right to bargain collectively with the employer on behalf of the latter's employees with respect to wages, hours and working conditions and have requested that the unions have the exclusive right to have their members perform work for the employer; that Air-X-Hauster Workers Association is a labor organization which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, hours of employment or conditions of work; that Air-X-Hauster Workers Association represents the majority of the employees and has made demand upon employer to be recognized as the exclusive bargaining agent of the latter's employees and has made a request of the employer to negotiate a written contract relating to wages, hours and working conditions and has demanded the exclusive right to have its members perform work for the employer; that the Air-X-Hauster Workers Association has not been financed, in whole or in part, interfered with, dominated or controlled by employer, or any representative of the latter; that the unions are engaged in concerted interference with the operation of employer's business for the purpose of compelling the latter to refuse to recognize Air-X-Hauster Workers Association as exclusive bargaining representative of employer's employees and for the purpose of

forcing and compelling employer to bargain collectively with the unions on behalf of employer's employees and to compel the former to employ only members of the unions in connection with employer's business; that the unions' concerted interference with employer's business arises out of a controversy between said unions and Air-X-Hauster Workers Association as to which of said unions has, or should have, the exclusive right to bargain collectively with employer on behalf of its employees, or any of them, and as to which of said unions has, or should have, the exclusive right to have its members perform work for employer; that the concerted interference with the business of employer by the unions consists of a primary picket line which causes customers and suppliers of employer to refuse to do business with it, and a consumer secondary boycott wherein the unions threatened officials and supervisors of companies with whom employer does business, with picketing and boycotting if said companies do not cease doing business with the latter; that, as a consequence of said threats, companies with whom employer has in the past done business have ceased doing business with it; that the unions carry picket signs which proclaim to the public that employer is "unfair to organized labor"; that the unions characterize employer as "unfair to organized labor," only because employer has failed and refused to recognize the unions as the exclusive representative for the employees of employer. Based upon its verified complaint and supporting affidavits, employer sought a preliminary injunction restraining the unions from:

(a) "Picketing . . . at or near, around or in front of the entrance to plaintiff's place of business . . ."

(b) "Persuading, inducing, or causing by any means or manner whatsoever any person, customer or supplier, to refrain from doing business with plaintiff."

(c) "Representing to any person that plaintiff is unfair to organized labor or to the American Federation of Labor, or to any one associated therewith."

(d) "Persuading, inducing or causing plaintiff to cease recognizing the Air-X-Hauster Workers Association as the exclusive bargaining agency for plaintiff's employees by concerted interference with plaintiff's business in any manner whatsoever."

(e) "Causing plaintiff to interfere with or coerce its employees in their designation of a collective bargaining representative."

The unions, by their verified answers, denied the allegations relating to such asserted jurisdictional controversy and offered two affirmative defenses; the first such defense being that the state court was without jurisdiction to enjoin the conduct complained of because such jurisdiction had been preempted by the authority vested in the National Labor Relations Board under federal law.

Upon the hearing of the application for a preliminary injunction, it was stipulated in open court that the employer was a corporation engaged in interstate commerce within the meaning of section 2(7) of the National Labor Relations Act, as amended, popularly known as the Taft-Hartley Act.

In its order, "denying preliminary injunction," the trial court concluded that, "it does not have jurisdiction in this matter to issue a preliminary injunction," because "While the Supreme Court of California held in *Sommer* v. *Metal Trades Council*, 40 Cal.2d 392 [254 P.2d 559], that the state court had jurisdiction under the facts in that case to issue an injunction, subsequent decisions of the Supreme Court of the United States indicate that in labor matters where the employer is engaged in interstate commerce state courts do not have jurisdiction to issue injunctions except in the exercise of the police power of the state. The question is a federal question and this court deems itself bound by decisions of the Supreme Court of the United States." From such order, plaintiff employer prosecutes this appeal.

It is first contended by appellant that the trial court had no power to act in the instant case except in accordance with the latest decision of the Supreme Court of California in *Sommer* v. *Metal Trades Council*, 40 Cal.2d 392 [254 P.2d 559], wherein the court held (at p. 401) under the facts therein presented, "there is involved a possible area of activity which is neither protected nor condemned under the federal act, and pursuant to the foregoing decisions" (*International Union* v. *Wisconsin Emp. Relations Board*, decided Feb., 1949, 336 U.S. 245 [69 S.Ct. 516, 93 L.Ed. 651]; *Algoma Plywood & Veneer Co.* v. *Wisconsin Emp. Relations Board*, decided March, 1949, 336 U.S. 301 [69 S.Ct. 584, 93 L.Ed. 691]; *Plankinton Packing Co.* v. *Wisconsin Emp. Relations Board*, decided February, 1950, 338 U.S. 953 [70 S.Ct. 491, 94 L.Ed. 588]; *International Union* v. *O'Brien*, decided May, 1950, 339 U.S. 454 [70 S.Ct. 781, 94 L.Ed. 978], and *Amalgamated Assn.* v. *Wisconsin Emp. Relations Board*, decided

February, 1951, 340 U.S. 383 [71 S.Ct. 359, 95 L.Ed. 364])
"is subject to state action under the anti-jurisdictional strike
provisions of the Labor Code." While conceding that state
authority and action must fall where it is in conflict with
federal legislation (*Hill* v. *Florida* (1944), 325 U.S. 538 [65
S.Ct. 1373, 89 L.Ed. 1782]; *Bethlehem Steel Co.* v. *New York
State L.R.B.* (1949), 330 U.S. 767 [67 S.Ct. 1026, 91 L.Ed.
463]; *Amalgamated Assn.* v. *Wisconsin Emp. Relations Board*
(1951), 340 U.S. 383 [71 S.Ct. 359, 95 L.Ed. 364]; *International Union* v. *O'Brien* (1950), 339 U.S. 454 [70 S.Ct. 781,
94 L.Ed. 978]; *Garner* v. *Teamsters etc. Union,* 346 U.S. 485
[74 S.Ct. 161, 98 L.Ed. 228]; *Capital Service Inc.* v. *National
Labor Relations Board,* 347 U.S. 501 [74 S.Ct. 699, 98 L.Ed.
887]; and *Weber* v. *Anheuser-Busch,* 348 U.S. 468 [75 S.Ct.
480, 99 L.Ed. 546], appellant earnestly insists that the instant
case is identical factually in all respects with the Sommer
case, *supra,* and that it is therefore the bounden duty of any
court in this state subordinate to the Supreme Court, not to
announce changes in what has hitherto been treated within
this state as the settled law with respect to the constitutionality or legality of a state statute, unless there be so exact a
parallel between a particular case presented and a controlling
decision of a federal court, that no reasonable distinction
between them can be made (*Birkhofer* v. *Krumm,* 27 Cal.App.
2d 513, 536-537 [81 P.2d 609]). Appellant does not, however, contend that a state court has jurisdiction to grant
relief against concerted labor activities which are either forbidden or protected by the amended Federal Labor Relations
Act (*International Union* v. *O'Brien,* 339 U.S. 454 [70 S.Ct.
781, 94 L.Ed. 978]) or that the application of the federal
statutes to determine whether the area of regulation of concerted labor activities is open or closed to state regulation
presents a federal question, upon which the Supreme Court
of the United States is the ultimate authority (21 C.J.S.
(Courts 206) at pp. 365, 366, 377 and cases therein cited; 7
Cal.Jur. (Courts. paragraph 48) at p. 646 and cases cited
therein). The Supreme Court of California has frequently
recognized that an act of Congress, such as the Taft-Hartley
Act, is the "supreme law of the land" under article VI,
section 2 of the federal Constitution and supersedes state
statutes to the extent that they are inconsistent with its
purpose. (*Lovett* v. *Bell,* 30 Cal.2d 8, 14 [180 P.2d 335];
*Miller* v. *Municipal Court,* 22 Cal.2d 818, 851 [142 P.2d 297].
(See *In re De Silva,* 33 Cal.2d 76 [199 P.2d 6]; *Gerry of*

*Calif.* v. *Superior Court,* 32 Cal.2d 119 [194 P.2d 689].)
It must therefore be admitted, and appellant inferentially so
concedes, that regardless of the decision in the Sommer case,
*supra,* the trial court was bound by the more recent con-
trolling decisions of the Supreme Court of the United States
if there was "so exact a parallel" between the case now
engaging our attention and "the controlling decisions of the
Federal Supreme Court" that "no reasonable distinction
between them can be made."

Let us therefore examine the controlling decisions of the
United States Supreme Court to determine whether "the
facts of the instant case" fall within "the area of activities,
neither protected nor prohibited that the state may regulate."

There can be no doubt that state action is permissible
to enjoin activity which threatens "a probable breach of the
State's peace" or calls for "extraordinary police measures,"
such as recurrent unannounced work stoppages (*International
Union* v. *Wisconsin Emp. Relations Board,* 336 U.S. 245 [69
S.Ct. 516, 93 L.Ed. 651]; mass picketing, threats of bodily in-
jury and property damage to employees, obstruction of
streets and public roads, blocking of entrance to and egress
from a factory and picketing of employees' homes (*Allen-
Bradley Local* v. *Wisconsin Emp. Relations Board,* 315 U.S.
740 [62 S.Ct. 820, 86 L.Ed. 1154], because such conduct is
not subject to regulation by the federal board either by pro-
hibition or by protection. ■ However, in the case at bar
there is no suggestion or contention that the activities com-
plained of were anything except peaceful and orderly. Ap-
pellant employer herein sought injunctive relief against: (a)
primary picketing; (b) primary boycotting; (c) secondary
boycotting; (d) recognition strikes; (e) jurisdictional strikes;
(f) causing the employer to interfere with or coerce its em-
ployees in their designation of a collective bargaining repre-
sentative.

As pointed out by respondent, "Section 7 of the National
Labor Relations Act, as amended, by the Labor Management
Relations Act provides that 'Employees shall have the right
. . . to engage in . . . concerted activities for the purpose of
collective bargaining or other mutual aid or protection . . .'

"These 'concerted activities' protected by Section 7 of the
Federal Act clearly include the right to strike, peacefully
picket, and boycott for purposes and by methods not pro-
hibited by Section 8. (*International Union* v. *O'Brien,* 339
U.S. 454 [70 S.Ct. 781, 94 L.Ed. 978]; *Amalgamated Assn.*

v. *Wisconsin Emp. Relations Board,* 340 U.S. 383 [71 S.Ct. 359, 95 L.Ed. 364] ; and *Garner* v. *Teamsters etc. Union,* 346 U.S. 485 [74 S.Ct. 161, 98 L.Ed. 228].)

"Section 8(b)(4), in turn, prohibits a labor organization or its agents from engaging in certain specified types of picketing, secondary boycotting, recognition strikes, and jurisdictional strikes. (*Garner* v. *Teamsters etc. Union,* 346 U.S. 485 [74 S.Ct. 161, 98 L.Ed. 228] ; *Capital Service, Inc.* v. *National Labor Relations Board,* 347 U.S. 501 [74 S.Ct. 699, 98 L.Ed. 887].)

"Other provisions of the Federal Act provide appropriate machinery for dealing with controversies between labor organizations with respect to exclusive bargaining representative (§ 9) and exclusive work jurisdiction (§ 10(k)) ; for securing limited injunctions against prohibited picketing, striking, and boycotting (§ 10(1)), and for securing judicial decrees against this and other proscribed conduct of a labor organization or its agents (§ 10(c)). Such other prohibited conduct includes restraining or coercing employees in the exercise of their right to choose their collective bargaining representative (§ 8(b)(1)(A)), and causing an employer to discriminate against his employees in order to influence their choice of a bargaining representative (§ 8(b)(2))."

Since it is conceded that appellant employer was engaged in interstate commerce, we are persuaded from a reading of the cases of *Weber* v. *Anheuser-Busch, Inc.,* 348 U.S. 468 [75 S.Ct. 480, 99 L.Ed. 546], and *Capital Service, Inc.* v. *National Labor Relations Board,* 347 U.S. 501 [74 S.Ct. 699, 98 L.Ed. 887], that while it is not easy for a state court to decide. merely on the basis of a complaint, supporting affidavits and an answer, whether the subject matter is the concern exclusively of the federal board and withdrawn from the state. nevertheless, in the instant proceeding the trial court correctly concluded that a state court had no power to enjoin the picketing in that the federal board was clothed with jurisdiction to consider and determine in the first instance any charge of unfair labor practices under the federal act in connection with appellant employer's business. In the annotation on "National Labor Relations Act and Labor Management Relations Act as excluding state actions" appearing in 99 L.Ed. 560, 561, the holding in *Weber* v. *Anheuser-Busch, Inc., supra,* is thus epitomized: "It was held that the federal act precludes a state court from enjoining, as a viola-

tion of the state's restraint of trade statute, a labor union's picketing an employer's plant for the purpose of compelling him to insert into a contemplated collective labor contract a clause obligating him to employ, for repair or replacement of machinery, only contractors who have collective labor agreements with the union. The decision seems to rest on the ground that the union conduct involved was either an unfair labor practice under the federal act or, if not, was protected by that act. It was pointed out that even though the federal Board, upon a charge of an unfair labor practice under a specified section of the Labor Management Relations Act, had held that this section was not violated, the Board had not ruled that no unfair labor practice was involved in the union conduct of which the employer complained. The court's conclusion was that even though the rulings of the federal Board are not wholly consistent on the meaning of the sections of the federal act outlawing 'unfair labor practices,' and on the area of 'concerted activities' protected by the federal act, a state court must decline jurisdiction, in deference to the federal Board, where the moving party itself alleges unfair labor practices, where the facts reasonably bring the controversy within the sections of the federal act prohibiting these practices, and where the conduct, if not prohibited by the federal act, may be reasonably deemed to come within the protection afforded by that act.

"A state court has no jurisdiction to enjoin, at the instance of an employer engaged in interstate commerce, the picketing of the employer's premises, delaying the construction of an oil terminal, where the picketing was conducted for one of the following purposes: coercing the employer to sign closed shop contracts with the defendant unions; coercing the employees to become members of these unions, even though the employees voted, in an election conducted by the federal Board, against joining the unions involved; inducing the employees of another employer (not involved in the litigation) to engage in a concerted refusal to perform services in the course of their employment at the plaintiff employer's oil terminal for the purpose of forcing again other employers (likewise not involved in the present litigation) to recognize the defendant unions as the representatives of their employees, even though such unions had not been so certified by the federal Board. *Pocahontas Terminal Corp.* v. *Portland Bldg. & Const. Trade Council* (1950 D.C.Me.), 93 F.Supp. 217. The

court pointed out that the facts stated above would constitute violations of unfair labor practice provisions of the federal act.''

The order appealed from is affirmed.

Doran, J., and Fourt, J., concurred.

A petition for a rehearing was denied March 26, 1956, and appellant's petition for a hearing by the Supreme Court was denied April 30, 1956. Shenk, J., and Spence, J., were of the opinion that the petition should be granted.