[Civ. No. 12267. Third Dist. Nov. 9, 1970.]

STONEY CREEK ORCHARDS et al., Plaintiffs and Appellants, v. THE STATE OF CALIFORNIA, Defendant and Respondent.

904

**COUNSEL**

Watt & Leverenz and Reginald M. Watt for Plaintiffs and Appellants.

Thomas C. Lynch, Attorney General, Lloyd Hinkelman and Dan G. Lubbock, Deputy Attorneys General, for Defendant and Respondent.

OPINION

JANES, J.—Plaintiffs appeal from a judgment dismissing their complaint in inverse condemnation after the state's general demurrer was sustained without leave to amend.

The complaint alleges that the bank of the Sacramento River on plaintiffs' lands has been and will continue to be eroded "by the operation of the Central Valley Project" and "by the change in the natural stream flow caused by the plan, design, construction, and operation of Shasta, Keswick, and Black Butte Dams[1] and the use of the Sacramento River as a canal for the transportation of water for the Central Valley Project." It is also alleged that defendant state "approved the plan of each unit of the Central Valley Project," that there has been "significant State involvement and substantial participation" in the development of that project, and, in particular, that the state "participated in the planning and development of . . . Shasta, Keswick and Black Butte Dams as units of the Central Valley Project."

At plaintiffs' request, the trial court took judicial notice of certain documents of the United States Senate and House of Representatives, and of certain bulletins issued by defendant state. On this appeal, plaintiffs' brief cites those materials as showing "substantial State participation" in the planning and development activities alleged in their complaint.[2] Plaintiffs emphasize also the statement of the California Supreme Court that "[f]or many years the two governments [state and federal] have peacefully and wholeheartedly cooperated in the planning and construction of this

---

[1]Shasta Dam and Keswick Dam are authorized units of the Central Valley Project (Wat. Code, §§ 11205-11209), as is Black Butte Dam (Wat. Code, § 11276).

[2]For example, for the proposition that " 'the Sacramento River is now used as a canal for the conveyance of irrigation water from Shasta Dam to the Tracy Pumping Plant in the Delta which lifts it 200 feet for transportation southward through the Delta-Mendota Canal . . . ,' " plaintiffs cite Senate Document No. 103, 86th Congress, 2d Session (referred to in Water Code section 12649.1), and "Bulletin No. 3—The California Water Plan" (1957), an official publication of the State of California, Department of Water Resources.

Testimony of Edward Hyatt, State Engineer of the State of California, in hearings before the Committee on Flood Control, House of Representatives, 74th Congress, 1st Session, is also relied upon by plaintiffs, as are the "Central Valley Project Documents" of former Representative (and U. S. Senator) Clair Engle, to establish participation by the State of California in the planning and use of the Sacramento River as a canal for the transportation of water in a vast, coordinated public project (viz., "Rules and regulations for operation of the main Central Valley reservoirs for the control of floods were established by cooperative agreement between the Reclamation Bureau and the Corps of Engineers, with the concurrence of the State Division of Water Resources"). The trial court was not formally requested to take judicial notice of the Engle documents, but they were referred to by both sides in the hearing on the demurrer.

huge project. In the very truest sense of the terms it [the Central Valley Project] is and has been a cooperative project." (*Ivanhoe Irr. Dist.* v. *All Parties* (1960) 53 Cal.2d 692, 714 [3 Cal.Rptr. 317, 350 P.2d 69].)

Defendant state, on the other hand, cites the same and additional materials (including numerous cases) as establishing that the Shasta, Keswick and Black Butte Dams "are the property of the United States Government and were *constructed* and are *operated* and *maintained* by the United States pursuant to Federal law" and that those dams "are units of the Federal Central Valley Project, which is owned and operated by the Federal Government and beyond the control of the State of California. . . ."[3] (Italics in defendant's brief.)

Except as briefly footnoted, we need not further summarize the materials thus relied on by the parties. ■ " '[I]n passing upon the question of the sufficiency or insufficiency of a complaint to state a cause of action, *it is wholly beyond the scope of the inquiry to ascertain whether the facts stated are true or untrue.*' " (*Wohlgemuth* v. *Meyer* (1956) 136 Cal.App.2d 326, 332 [293 P.2d 816].) (Italics ours.) ■ "The allegations of the complaint must for the purposes of demurrer be accepted as true unless they are contrary to facts of which a court may take judicial notice." (*Alisal Sanitary Dist.* v. *Kennedy* (1960) 180 Cal.App.2d 69, 73 [4 Cal.Rptr. 379].)

The plain theory of plaintiffs' action is that use of the Sacramento River as a canal and the artificial regimen of its flow attributable to the plan, design, construction, and operation of the Shasta, Keswick and Black Butte Dams substantially contribute to erosion of the river banks on plaintiffs' properties, and that the State of California, having participated in the planning and development of this multi-reservoir system, is answerable in damages for that harm.

No document or case cited by defendant resolves the factual question whether, as alleged, the state substantially participated in the planning and development of the three dams and other units of the Central Valley Project. ■ By alleging substantial state participation in such activity and that plaintiffs' lands have been damaged by that activity, the complaint

---

[3] Admitting that it "conceived the general plan for the State Central Valley Water Project," the state points out, from matters judicially noticed and other authorities, that this general plan was executed by the federal government; that the project is being operated as a federal project pursuant to federal reclamation laws; and contends that while it "can be inferred . . . that the Federal Government, where convenient, has used the State's plans and studies and welcomed the State's support of the Federal Bureau of Reclamation's requests for appropriations necessary to carry out the Project," this does not (the state says) constitute "sufficient participation" to hold the state responsible for damage caused by the project.

states a cause of action for inverse condemnation. (See *Sheffet* v. *County of Los Angeles* (1970) 3 Cal.App.3d 720, 734-735 [84 Cal.Rptr. 11] (substantial participation: approval of plans and acceptance of streets by defendant county, although private contractor actually planned and constructed the streets; increased burden on plaintiff's ditch was a necessary consequence of tract design and creation and improvement of the streets); *Frustuck* v. *City of Fairfax* (1963) 212 Cal.App.2d 345, 362-363 [28 Cal.Rptr. 357] (substantial participation: approval of subdivision maps and drainage system plans; city failed to appreciate probability that drainage system, as conceived and while functioning, would damage plaintiff's property).)

The most that could be said in defendant's behalf, as to the documents submitted and the authorities relied upon, is that they show the federal government was empowered to construct the dams, and that ownership and operation of the Central Valley Project is vested in the United States. The issue posed by the complaint, however, is not whether the state or federal government was statutorily *authorized* to act, but whether there was *in fact* substantial participation by the state. ■ If plaintiffs' alleged losses resulted from planning and development in which there was substantial participation by the state, it is immaterial, on this appeal, which sovereign holds title or has the responsibility for operation of the project. (See *Clement* v. *State Reclamation Board* (1950) 35 Cal.2d 628, 645 [220 P.2d 897]; *Sheffet* v. *County of Los Angeles, supra,* 3 Cal.App.3d at pp. 734-735; *Frustuck* v. *City of Fairfax, supra,* 212 Cal.App.2d at pp. 362-363; cf., *Gilmer* v. *Lime Point* (1861) 18 Cal. 229, 255-260.)

Defendant contends also that plaintiffs' complaint is defective in that the prayer is for injunctive relief. Since the state courts have no power to grant injunctive relief when the subject matter falls within the exclusive jurisdiction of the federal government (*G. C. Breidert Co.* v. *Sheet Metal etc. Assn.* (1956) 139 Cal.App.2d 633 [294 P.2d 93]), the trial court was without jurisdiction, defendant says, to grant injunctive relief or impose any other restrictive conditions upon the operation of such federal facilities. The complaint at bench is titled "Complaint For Damages In Inverse Condemnation And For Injunctive Relief," and, among other items of relief sought, it does contain a general prayer "[f]or such injunctive relief as to the Court seems proper." Review of the complaint in its entirety reveals, however, that the words of injunction represent no more than the ordinary wishful thinking of the pleader in such cases. The complaint states a cause of action in inverse condemnation, and no more, and plaintiffs make no argument to the contrary. ■ The nature of the cause of action is determined "from the gist of the action as framed by the

pleadings and the facts in the case [citations]; but is not fixed by the prayer or the title. [Citations]." (*Paularena* v. *Superior Court* (1965) 231 Cal. App.2d 906, 911-912 [42 Cal.Rptr. 366]; see 1 Witkin, Cal. Procedure (1954), Actions, § 22, pp. 512-514, and 1967 Supp.)

Defendant demurred both generally and specially to plaintiffs' complaint. As we have pointed out, the general demurrer was sustained. The special demurrer on the ground of uncertainty has not been ruled upon, hence that determination must be made by the trial court upon return of the case. (*Harry H. White Lbr. Co.* v. *Crocker-Citizens Nat. Bk.* (1967) 253 Cal. App.2d 368, 376 [61 Cal.Rptr. 381].)

The judgment of dismissal is reversed with directions to the trial court to overrule the general demurrer and to rule upon the special demurrer.

Pierce, P. J., and Friedman, J., concurred.

A petition for a rehearing was denied December 8, 1970, and respondent's petition for a hearing by the Supreme Court was denied December 30, 1970.