[L. A. No. 21347. In Bank. Mar. 10, 1953.]

SEVEN UP BOTTLING COMPANY OF LOS ANGELES INCORPORATED, Appellant, v. GROCERY DRIVERS UNION LOCAL 848 (an Unincorporated Association) et al., Respondents.

Thomas P. Menzies, Harold L. Watt, Carl M. Gould and Hill, Farrer & Burrill for Appellant.

Roth & Bahrs and George O. Bahrs as Amici Curiae on behalf of Appellant.

Stevenson & Richman, Todd & Todd, Clarence E. Todd, John C. Stevenson and Arthur Garrett for Respondents.

Charles P. Scully and Tobriner & Lazarus as Amici Curiae on behalf of Respondents.

CARTER, J.—By its complaint in this action plaintiff sought injunctive relief and damages. Following the issuance of a preliminary injunction, the case was called for trial, at which time defendants' objection to the introduction of any evidence on the ground that the complaint did not state facts sufficient to constitute a cause of action was sustained, and the court gave judgment that plaintiff recover nothing, but continued the preliminary injunction in force pending appeal. This appeal is by plaintiff from that judgment. There is no appeal from the order granting the injunction. There was a dispute as to whether the appeal was from the order sustaining the objection to the evidence, or from the judgment, but that was resolved in favor of the latter appeal. (*Seven Up Bottling Co.* v. *Grocery Drivers Union,* 97 Cal.App.2d 623 [218 P.2d 41].)

Preliminarily it should be observed that defendants assert that some affidavits presented in connection with the preliminary injunction proceedings should be considered on this appeal as supplementing and explaining the complaint, because they were brought here by plaintiff as a part of the ''clerk's transcript.'' The judgment from which the appeal is taken, however, is the same as one of dismissal after demurrer sustained. No appeal was taken by defendants from the order granting the preliminary injunction, or from the judgment and, of course, plaintiff is not objecting to the order. The primary issue presented for decision in the court below and here is the validity of California's Jurisdictional Strike Law, *infra.* The court, in rendering its judgment, did not purport to pass upon anything but the sufficiency of the complaint. The proceedings on the preliminary injunction were separate from those leading to the judgment. Hence we deem it proper to consider only the complaint, and such cases as *Brock* v. *Fouchy,* 76 Cal.App.2d 363 [172

P.2d 945], *Mason* v. *Drug, Inc.*, 31 Cal.App.2d 697 [88 P.2d 929], and *Fox Chicago R. Corp.* v. *Zukor's Dresses, Inc.*, 50 Cal.App.2d 129 [122 P.2d 705], relied upon by defendants, are not controlling.

The complaint is in four counts. Plaintiff is a corporation engaged in the business of bottling and distributing beverages. Most of defendants are labor unions, referred to as teamsters' unions, and are labor organizations existing for the purpose of dealing with employers concerning grievances, labor disputes, wages, hours and working conditions. Other defendants are officers or agents of the unions. All defendants have acted in "concert" in the activities stated in the complaint. Plaintiff employs persons in its business who were, in March, 1949, members of Seven Up Employees Association, hereafter referred to as the association, an unincorporated labor organization of employees existing for the usual purposes of such groups. The association is not financed, dominated or controlled in any respect by plaintiff. In March, 1949, plaintiff and the association entered into a collective bargaining agreement prescribing the wage rate, working conditions, etc., of plaintiff's employees, which is still in effect. Since June, 1949, defendants have been carrying on concerted "economic activities" to compel plaintiff to recognize defendant unions as the collective bargaining agents of its employees, and a controversy has arisen between defendants and the association as to which should represent plaintiff's employees. The activities consist of picketing by defendants of retail food markets where plaintiff's products are sold, resulting in the refusal of those markets to buy or sell plaintiff's products. Plaintiff has no dispute or controversy with any of its employees with regard to wages, hours or working conditions.

All of the foregoing appears from the first count in the complaint. In addition it is charged that plaintiff has suffered damages of over $2,000 because of defendants' acts and that the damage remedy is inadequate. The second, third and fourth counts reallege the first count. Count two asserts that defendants' actions violated the Jurisdictional Strike Law, *infra*; count three, that defendants, by their activities, are endeavoring to induce plaintiff and its employees to break the 1949 collective bargaining agreement between plaintiff and the association. Count four alleges that the activities of defendants are aimed at compelling plaintiff to recognize defendants as bargaining agents when it would be unlawful for plaintiff to do so, for to compel their employees to be-

long to a certain union would be in violation of sections 921-923 of the Labor Code and the Labor Management Relations Act of 1947 (29 U.S.C.A., § 141 et seq.); and that as a result it has been damaged in the sum of $100,000.

On this appeal plaintiff rests its case on the Jurisdictional Strike Act, *infra,* public policy, Labor Code, sections 921-923 and interference with contract relations.

The Jurisdictional Strike Act was adopted in 1947 (Stats. 1947, ch. 1388) by adding sections 1115-1120 to the Labor Code. A jurisdictional strike is defined as "a concerted refusal to perform work for an employer or any other concerted interference with an employer's operation or business, arising out of a controversy between two or more labor organizations as to which of them has or should have the exclusive right to bargain collectively with an employer on behalf of his employees or any of them, or arising out of a controversy between two or more labor organizations as to which of them has or should have the exclusive right to have its members perform work for an employer." (Lab. Code, § 1118.) A labor organization is "any organization or any agency or employee representation committee or any local unit thereof in which employees participate, and exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, hours of employment or conditions of work, which labor organization is not found to be financed in whole or in part, interfered with, dominated or controlled by the employer." (*Id.* § 1117.) Nothing in the act shall "interfere with collective bargaining subject to the prohibitions herein set forth, nor to prohibit any individual voluntarily becoming or remaining a member of a labor organization, or from personally requesting any other individual to join a labor organization." (*Id.* § 1119.) The jurisdictional strike is "against the public policy" of the state and is "unlawful," (*Id.* § 1115) and any person suffering injury from a violation of the act is entitled to injunctive relief and damages. (*Id.,* § 1116.)

In view of the result reached herein it will be necessary to consider only the Jurisdictional Strike Law. There is no allegation showing that plaintiff was engaged in a business affecting interstate commerce and hence the Labor Management Relations Act of 1947, *supra,* has no application.

■ It should be clear that the activities of defendants, as alleged, fall within the terms of the act (Jurisdictional Strike Act). Defendants and the association are labor organizations and the latter is not financed, interfered with,

dominated or controlled by plaintiff. There has been a concerted interference by defendants with plaintiff's-employer's business. That interference arises out of a controversy between two or more labor organizations—defendants and the association—as to which of them should have the right to collectively bargain with plaintiff-employer. The latter follows from the allegation in the complaint that there was a collective bargaining agreement between the association and plaintiff, to the former of which plaintiff's employees belong, and that agreement controls the labor relations between them. Since then defendants have been carrying on concerted economic activities (picketing) to compel plaintiff to choose defendants as the exclusive bargaining representatives of its employees, who are working under the agreement. It may reasonably be inferred that the cause of such activity was a dispute between defendants and the association, for their demands to be exclusive agents would necessarily be to replace the association, and it was expressly alleged that: "Thereby, a controversy has arisen between the defendants and the Seven Up Employees' Association as to which of them has or should have the exclusive right to have its members perform work for the plaintiff in the job classifications above set forth." We do not take the use of "thereby" in the above quotation to mean that there was no dispute between defendants and the association before the activities were launched. Implicit in the pleading is the assertion of a dispute between defendants and the association which the former seek to win by their activities. In addition to the above it is alleged that defendants, Grocery Drivers Union Local 848, and the association claim bargaining rights on behalf of plaintiff's employees; that the bargaining agreement with the association was in full force and satisfactory to the association, and that defendants "knew of the existence of said contract and of the arrangements between plaintiff and its employees thereunder."

Defendants' contention of unconstitutionality of the act rests on the argument that under the guaranties of freedom of speech and of the press the picketing was lawful, and the act, therefore, in condemning concerted interference with the employer's business, is invalid, because it deprives them of the right to engage in lawful concerted action, that is, peaceful picketing; that such activity does not create a "clear and present danger" justifying a restraint on the freedoms mentioned.

 Peaceful picketing has been identified with freedom of speech—a means by which the pickets communicate to others the existence of a labor controversy. (*Thornhill* v. *Alabama*, 310 U.S. 88 [60 S.Ct. 736, 84 L.Ed. 1093]; *Carlson* v. *California*, 310 U.S. 106 [60 S.Ct. 746, 84 L.Ed. 1104]; *American Federation of Labor* v. *Swing*, 312 U.S. 321 [61 S.Ct. 568, 85 L.Ed. 855]; *Carpenters & J. Union* v. *Ritter's Cafe*, 315 U.S. 722 [62 S.Ct. 807, 86 L.Ed. 1143]; *Bakery & P. Drivers & Helpers, I.B.T.* v. *Wohl*, 315 U.S. 769 [62 S.Ct. 816, 86 L.Ed. 1178]; *Hotel & R. E. Intl. Alliance* v. *Wisconsin Emp. Relations Board*, 315 U.S. 437 [62 S.Ct. 706, 86 L.Ed. 946]; *Cafeteria Emp. Union* v. *Angelos*, 320 U.S. 293 [64 S.Ct. 126, 88 L.Ed. 58]; *Thomas* v. *Collins*, 323 U.S. 516 [65 S.Ct. 315, 89 L.Ed. 430]; *McKay* v. *Retail Auto. S.L. Union No. 1067*, 16 Cal.2d 311 [106 P.2d 373]; *Steiner* v. *Long Beach Local No. 128*, 19 Cal.2d 676 [123 P.2d 20]; *In re Bell*, 19 Cal.2d 488 [122 P.2d 22]; *Magill Bros., Inc.* v. *Building Service Intl. Union*, 20 Cal.2d 506 [127 P.2d 542]; *People* v. *Dail*, 22 Cal.2d 642 [140 P.2d 828]; *Emde* v. *San Joaquin County Central Labor Council*, 23 Cal.2d 146 [143 P.2d 20, 150 A.L.R. 916]; *James* v. *Marinship Corp.*, 25 Cal.2d 721 [155 P.2d 329, 160 A.L.R. 900]; *Park & T.I. Corp.* v. *International etc. of Teamsters*, 27 Cal.2d 599 [165 P.2d 891, 162 A.L.R. 1426]; *In re Porterfield*, 28 Cal.2d 91 [168 P.2d 706, 167 A.L.R. 675]; *In re Blaney*, 30 Cal.2d 643 [184 P.2d 892]; *Northwestern Pac. R. Co.* v. *Lumber & S.W. Union*, 31 Cal.2d 441 [189 P.2d 277].) It has been pointed out that such identification does not free the concerted activity of picketing from all restraint.

 "And it appears to be settled that injunctive relief against picketing is available where the object sought to be achieved or the means used to achieve it are unlawful. (See, *Park & T.I. Corp.* v. *International etc. Teamsters, supra*; *James* v. *Marinship Corp., supra*; *Magill Bros., Inc.* v. *Building Service Emp. Intl. Union, supra*; *Dorchy* v. *State of Kansas*, 272 U.S. 306 [47 S.Ct. 86, 71 L.Ed. 248]; *Milk Wagon Drivers Union* v. *Meadowmoor Dairies, supra* [312 U.S. 287 (85 L.Ed. 836, 61 S.Ct. 552, 132 A.L.R. 1200)]; *Carpenters Union* v. *Ritter's Cafe, supra*; *Allen-Bradley Local* v. *Board*, 315 U.S. 740 [62 S.Ct. 820, 86 L.Ed. 1154]. . . .

"The solution of labor problems requires, however, an approach with a broader perspective. Although literally, and in a strict sense, the objective or means employed in the union activity may be unlawful, there still remains the necessity for preserving the general public welfare and the con-

stitutional guaranties of freedom of speech, press and assembly. The asserted illegality may be merely incidental or of only minor importance when weighed against the requirement of competition and some measure of equality in the economic struggle between the seller and purchaser of services. The public interest may tip the scales one way or the other. If preventive relief were available in every instance of labor activity interfering with the performance by a common carrier or other public utility of its duties, or involving some unlawful act, no matter how insignificant on the part of the person upon whom the economic pressure is exerted, conceivably there would be little left in the way of protection for the exercise of the fundamental rights of freedom of speech, press and assembly, and organized labor would be at a serious if not hopeless disadvantage in our competitive economy.'' (*Northwestern Pac. R. Co.* v. *Lumber & S.W. Union, supra,* 31 Cal.2d 441, 445.)

Furthermore, it should be noted that the clear and present danger test as applied in the ordinary free speech cases is not "necessarily" controlling. (*In re Blaney, supra,* 30 Cal.2d 643, 646.) Since the foregoing cases were decided the United States Supreme Court has upheld restraints on picketing without mentioning clear and present danger. (*Hughes* v. *Superior Court,* 339 U.S. 460 [70 S.Ct. 718, 94 L.Ed. 985] ; *International Bro. of Teamsters Union* v. *Hanke,* 339 U.S. 470 [70 S.Ct. 773, 94 L.Ed. 995, 13 A.L.R.2d 631].) In a case in the group of recent cases hereinafter discussed, in which the test was mentioned, it was set forth as follows : ''The Missouri policy against restraints of trade is of long standing and is in most respects the same as that which the Federal Government has followed for more than half a century. It is clearly drawn in an attempt to afford all persons an equal opportunity to buy goods. There was clear danger, imminent and immediate, that unless restrained, appellants would succeed in making that policy a dead letter insofar as purchases by nonunion men were concerned. Appellants' power with that of their allies was irresistible. And it is clear that appellants were doing more than exercising a right of free speech or press. . . . They were exercising their economic power together with that of their allies to compel Empire to abide by union rather than by state regulation of trade.'' (*Giboney* v. *Empire Storage & Ice Co.,* 336 U.S. 490, 502 [69 S.Ct. 684, 93 L.Ed. 834].) Under that view, and application of the test, it is clear that defendants' activities

here will have the immediate result of thwarting the main purpose of the act to protect an employer against interference with his business and the public from disturbances resulting from a dispute between unions as to which should have the right to bargain collectively (and all that entails) with the employer. Thus it would appear that the test as stated in the Giboney case, *supra*, is here satisfied.

This brings us then to the question of the extent to which the Legislature may regulate activities, which have some aspects of free speech, in labor controversies, and particularly those activities relating to disputes between rival unions, both seeking to attain the status of the exclusive bargaining agent for an employer's employees. The solution hinges upon the recent cases decided by the United States Supreme Court.

■ First, it should be observed that the basic case applying the free speech guaranty to picketing had this to say while invoking that guaranty: "It is true that the rights of employers and employees to conduct their economic affairs and to compete with others for a share in the products of industry are subject to modification or qualification in the interests of the society in which they exist. This is but an instance of the power of the State to set the limits of permissible contest open to industrial combatants." (*Thornhill* v. *Alabama, supra,* 310 U.S. 88, 103.) Similar remarks were made in subsequent cases. (*Carpenters & J. Union* v. *Ritter's Cafe, supra,* 315 U.S. 722; *Bakery & P. Drivers & Helpers, I.B.T.* v. *Wohl, supra,* 315 U.S. 769; *Hotel & R.E. Intl. Alliance* v. *Wisconsin Emp. Relations Board, supra,* 315 U.S. 437; *Thomas* v. *Collins, supra,* 323 U.S. 516.)

Following those expressions the subsequent decisions have dealt with various situations. *Giboney* v. *Empire Storage & Ice Co.,* 336 U.S. 490 [69 S.Ct. 684, 93 L.Ed. 834], dealt with peaceful picketing by a union in an effort to organize non-union ice peddlers, in which one ice dealer refused to agree not to sell to such peddlers. A judgment enjoining peaceful picketing to compel that dealer to make such an agreement was upheld by the Supreme Court of Missouri on the ground that to compel the dealer to agree would be in violation of Missouri's antitrade restraint act. The Supreme Court of the United States upheld the injunction, stating: "Neither *Thornhill* v. *Alabama, supra,* nor *Carlson* v. *California,* 310 U.S. 106 [60 S.Ct. 746, 84 L.Ed. 1104], both decided on the same day, supports the contention that conduct otherwise unlawful is always immune from state regulation because an

integral part of that conduct is carried on by display of placards by peaceful picketers. In both these cases this Court struck down statutes which banned all dissemination of information by people adjacent to certain premises, pointing out that the statutes were so broad that they could not only be utilized to punish conduct plainly illegal but could also be applied to ban all truthful publications of the facts of a labor controversy. But in the Thornhill opinion, at pp. 103-104, the Court was careful to point out that it was within the province of states 'to set the limits of permissible contest open to industrial combatants.' See *Lincoln Fed. Labor Union* v. *Northwestern Iron & Metal Co.*, 335 U.S. 525, 536, 542, 557 [69 S.Ct. 251, 260, 267, 93 L.Ed. 212, 6 A.L.R.2d 473]; *Allen-Bradley Local* v. *Wisconsin Emp. Relation Board*, 315 U.S. 740, 748-751 [62 S.Ct. 820, 86 L.Ed. 1154]. Further emphasizing the power of a state 'to set the limits of permissible contest open to industrial combatants' the Court cited with approval the opinion of Mr. Justice Brandeis in *Duplex Printing Press Co.* v. *Deering*, 254 U.S. 443, at 488 [41 S.Ct. 172, 65 L.Ed. 349]. On that page the opinion stated: 'The conditions developed in industry may be such that those engaged in it cannot continue their struggle without danger to the community. But it is not for judges to determine whether such conditions exist, nor is it their function to set the limits of permissible contest and to declare the duties which the new situation demands. *This is the function of the legislature* which, while limiting individual and group rights of aggression and defense, may substitute processes of justice for the more primitive method of trial by combat.'

"After emphasizing state power over industrial conflicts, the Court in the Thornhill opinion went on to say, at p. 104, that states may not 'in dealing with the evils arising from industrial disputes . . . impair the effective exercise of the right to discuss freely industrial relations. . . .' This statement must be considered in its context. It was directed toward a sweeping state prohibition which this Court found to embrace 'nearly every practicable, effective means whereby those interested—including the employees directly affected—may enlighten the public on the nature and causes of a labor dispute.' . . .

"Appellants also rely on *Carpenters & J. Union* v. *Ritter's Cafe*, 315 U.S. 722 [62 S.Ct. 807, 86 L.Ed. 1143], and *Bakery & P. Drivers & Helpers, I.B.T.* v. *Wohl*, 315 U.S. 769 [62 S.Ct. 816, 86 L.Ed. 1178], decided the same day. Neither

378

lends support to the contention that peaceful picketing is beyond legislative control. The Court's opinion in the Ritter case approvingly quoted a part of the Thornhill opinion which recognized broad state powers over industrial conflicts. In the Wohl case, the Court's opinion at p. 775 found no 'violence, force or coercion, or conduct otherwise unlawful or oppressive' and said that 'A state is not required to tolerate in all places . . . even peaceful picketing by an individual.' A concurring opinion in the Wohl case, at pp. 776-777, pointed out that picketing may include conduct other than speech, conduct which can be made the subject of restrictive legislation. No opinions relied on by petitioners assert a constitutional right in picketers to take advantage of speech or press to violate valid laws designed to protect important interests of society." (*Giboney* v. *Empire Storage & Ice Co.*, 336 U.S. 490, 498 [69 S.Ct. 684, 93 L.Ed. 834].)

The Giboney case was followed by *Hughes* v. *Superior Court*, 339 U.S. 460 [70 S.Ct. 718, 94 L.Ed. 985], where the California court was upheld in enjoining Negroes from picketing a store to enforce a demand that it hire a proportionate number of Negroes on the ground that it was picketing to compel racial discrimination, which was against the court declared public policy of the state. Four justices agreed with the opinion written by Justice Frankfurter and Justices Black, Minton and Reed concurred on the ground the case was controlled by the Giboney case. Justice Douglas did not participate. It was again pointed out that picketing is not free from any restraint even though having aspects of communication, stressing its coercive features.

Next came *Building Service Emp. Intl. Union* v. *Gazzam*, 339 U.S. 532 [70 S.Ct. 784, 94 L.Ed. 1045]. There in a suit for damages by a hotel owner employer, the employer had refused to sign a closed shop contract with a union because his employees at an election had declined to join the union, and for him to sign would violate a Washington statutory policy forbidding him to coerce his employees' choice of representative. Peaceful picketing followed and the Washington court gave damages and injunctive relief. The Supreme Court of the United States affirmed, holding that there was no violation of the free speech guaranty. After pointing out that picketing may be restricted, the court said: "The public policy of any state is to be found in its constitution, acts of the legislature, and decisions of its courts. 'Primarily it is for the lawmakers to determine the public policy of the State.' . . .

"The State of Washington has by legislative enactment declared its public policy on the subject of organization of workers for bargaining purposes. . . . Under the so-enunciated public policy of Washington, it is clear that workers shall be free to join or not to join a union, and that they shall be free from the coercion, interference, or restraint of *employers of labor* in the designation of their representatives for collective bargaining. Picketing of an employer to compel him to coerce his employees' choice of a bargaining representative is an attempt to induce a transgression of this policy, and the State here restrained the advocates of such transgression from further action with like aim. To judge the wisdom of such policy is not for us; ours is but to determine whether a restraint of picketing in reliance on the policy is an unwarranted encroachment upon rights protected from state abridgment by the Fourteenth Amendment.

". . . An adequate basis for the instant decree is the unlawful objective of the picketing, namely, coercion by the employer of the employees' selection of a bargaining representative." (*Building Service Emp. Intl. Union* v. *Gazzam, supra,* 339 U.S. 532, 537.)

In *International Bro. of Teamsters Union* v. *Hanke, supra,* 339 U.S. 470, the peaceful picketing by one picket was aimed at a person in the automobile repair business without employees because he kept open at times that were proscribed by agreement between the union and an association of employers engaged in the same business. The banner of the picket merely said "Union People Look for the Union Shop Card." The injunction was upheld in an opinion written by Justice Frankfurter, concurred in by three justices. Justice Clark concurred in the result. Three justices dissented. Justice Frankfurter said: "Our decisions reflect recognition that picketing is 'indeed a hybrid.' . . . The effort in the cases has been to strike a balance between the constitutional protection of the element of communication in picketing and 'the power of the State to set the limits of permissible contest open to industrial combatants.' . . . A State's judgment on striking such a balance is of course subject to the limitations of the Fourteenth Amendment. Embracing as such a judgment does, however, a State's social and economic policies, which in turn depend on knowledge and appraisal of local social and economic factors, such judgment on these matters comes to this Court bearing a weighty title of respect.

"These two cases emphasize the nature of a problem that is presented by our duty of sitting in judgment on a State's judgment in striking the balance that has to be struck when a State decides not to keep hands off these industrial contests. Here we have a glaring instance of the interplay of competing social-economic interests and viewpoints. Unions obviously are concerned not to have union standards undermined by non-union shops. This interest penetrates into self-employer shops. On the other hand, some of our profoundest thinkers from Jefferson to Brandeis have stressed the importance to a democratic society of encouraging self-employer economic units as a counter-movement to what are deemed to be the dangers inherent in excessive concentration of economic power." (*International Bro. of Teamsters Union* v. *Hanke, supra,* 339 U.S. 470, 474.)

*International Brotherhood* v. *National Labor Rel. Board,* 341 U.S. 694 [71 S.Ct. 954, 95 L.Ed. 1299], held that picketing in aid of a secondary boycott which was proscribed by statute could be prevented.

▉ Those cases and the discussion therein leave no doubt as to the validity of the instant act. It is not vague or uncertain as was the act in *In re Blaney, supra.* It is no more subject to attack than the broad language used in the Labor Management Relations Act of 1947 dealing with secondary boycott. In upholding this act the Supreme Court said: "The prohibition of inducement or encouragement of secondary pressure by § 8(b)(4)(A) carries no unconstitutional abridgment of free speech. The inducement or encouragement in the instant case took the form of picketing followed by a telephone call emphasizing its purpose. The constitutionality of § 8(b)(4)(A) is here questioned only as to its possible relation to the freedom of speech guaranteed by the First Amendment. This provision has been sustained by several Courts of Appeals. The substantive evil condemned by Congress in § 8(b)(4) is the secondary boycott and we recently have recognized the constitutional right of states to proscribe picketing in furtherance of comparably unlawful objectives. There is no reason why Congress may not do likewise.

"Petitioners object to the breadth of the Board's order as stated in 82 N.L.R.B. at 1030, *supra,* 341 U.S. 698-699, 71 S.Ct. 957. They contend that its language prohibits inducement not only of employees of Deltorto but also the inducement of employees of any other employer to strike, where an object thereof is to force Giorgi or any other employer

or person to cease doing business with Langer. To confine the order solely to secondary pressure through Giorgi or Deltorto would leave Langer and other employers who do business with him exposed to the same type of pressure through other comparable channels. The order properly enjoins petitioners from exerting this pressure upon Langer, through other employers, as well as through Giorgi and Deltorto. We may well apply here the principle stated in *International Salt Co.* v. *United States,* 332 U.S. 392, 400 [68 S.Ct. 12, 17, 92 L.Ed. 20] : 'When the purpose to restrain trade appears from a clear violation of law, it is not necessary that all of the untraveled roads to that end be left open and that only the worn one be closed.' '' (*International Brotherhood* v. *National Labor Rel. Board, supra,* 341 U.S. 694, 705.) The Jurisdictional Strike Law here involved specifically provides that a concerted refusal to work or concerted interference with an employer's business is against public policy when it arises out of a dispute between two labor organizations as to which should have the exclusive right to bargain collectively. Hence an activity such as picketing to achieve unlawful ends, refusal to work or interference with the employer's business when the dispute is between two organizations seeking exclusive rights, is banned. Wisely or unwisely the Legislature has declared the policy of this state that an employer's business shall not be interfered with or the public welfare disrupted by reason of an argument between two or more unions as to which shall be chosen to represent his employees, a matter which may hinge largely on the respective claims of the quality of representation. The act eliminates the situation where the labor organization is employer controlled, hence an independent union is not prevented from endeavoring to organize an employer's employees when they belong to an employer controlled union or no union. Whatever may have been the rule before the recent decisions of the United States Supreme Court, *supra,* we have the act which declares the public policy of this state and those cases establish its validity.

Judgment reversed.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Respondents' petition for a rehearing was denied April 2, 1953.