[L. A. No. 25805.   In Bank.   July 8, 1960.]

SURREY RESTAURANTS (a Corporation), Respondent, v. CULINARY WORKERS AND BARTENDERS UNION, LOCAL No. 535 (an Unincorporated Association) et al., Appellants.

Lewis Garrett, Lionel Richman, James M. Nicoson and Garrett, Richman & Nicoson for Appellants.

No appearance for Respondent.

WHITE, J.—This is an appeal by defendants, Culinary Workers Union and several of its officers, from an order of the trial court granting plaintiff a preliminary injunction under the Jurisdictional Strike Act (Lab. Code, §§ 1115-1120, 1122) to halt defendant union's recognitional strike. Plaintiff has not filed any briefs herein and the cause was submitted for decision without argument pursuant to rule 17 of the Rules on Appeal.

By its complaint herein, plaintiff contends that a dispute exists between defendant union (hereinafter referred to as the union) and an independent employees organization (hereinafter referred to as the independent) as to which should have the exclusive right to engage in collective bargaining with plaintiff on behalf of its employees; that the union's strike and picketing is, therefore, unlawful (Lab. Code, §§ 1115, 1118) and that therefore, the preliminary injunction was properly issued (Lab. Code, § 1116).

Plaintiff restaurant is operated in the City of Riverside and employs approximately 34 people. In September of 1958, several officers of the union approached plaintiff's managers and discussed the possibility of organization of the restaurant. The union had already enrolled several of plaintiff's employees and plaintiff's managers expressed themselves as favorable to the idea of unionization. The union submitted a tentative contract in which it was provided that it be recognized as bargaining agent for only those of plaintiff's employees that were already union members or would become so in the future; but that if ever a majority of plaintiff's employees joined the union then, and only then, would it be recognized as bargaining agent for the entire restaurant. Plaintiff delayed signing the proposed contract for several months for various reasons, during which time some of plaintiff's employees formed the independent. Upon plaintiff's further and final refusal to sign the contract due, it alleged, to the existence of the inde-

pendent the union called a strike and placed pickets around the restaurant.

The independent was formed in the following manner: At some time after the union had first contacted the plaintiff and requested a contract, a petition was circulated among plaintiff's employees on the premises and during working hours by several of the employees requesting the formation of an independent union. On October 22 or 23, 1958, a meeting was held in the restaurant to consider such proposal. Due, however, to the presence of Joseph Wollam (a union organizer) and those of plaintiff's employees who were already members of the union, the meeting was moved to an adjoining furniture store. The union alleges that one of plaintiff's managers secured permission for the employees to use the furniture store but plaintiff denies this. During the course of this meeting a vote was taken which resulted in the approval, by a majority of those present, of the formation of an independent union for the purpose of dealing with the plaintiff in matters affecting employment. None of the employees lost any pay due to their attendance at this, or later meetings of the independent during working hours. For this and other reasons the union alleges, but plaintiff traverses, that the independent is dominated and controlled by plaintiff. As will hereinafter appear we find it unnecessary to dispose of this contention.

Although the formation of the independent apparently had been accomplished at the time this action was commenced it had made no contract proposals or demands upon the plaintiff.

Immediately upon the commencement of the union's picket line plaintiff obtained a temporary restraining order against the former. Shortly thereafter a hearing was held pursuant to section 527 of the Code of Civil Procedure[1] to determine whether the temporary restraining order should be dissolved or a preliminary injunction granted. On the basis of the complaint, affidavits and testimony taken at the hearing the trial court granted a preliminary injunction pending trial of the cause on its merits. Defendants appeal from the order granting such injunction.

An injunction is authorized by the Jurisdictional Strike Act (Lab. Code, §§ 1115-1120, 1122) only to halt a

[1]"In case a temporary restraining order shall be granted without notice . . . the matter shall be made returnable on an order requiring cause to be shown why the injunction should not be granted . . . not later than ten days from the date of such order."

"jurisdictional" strike which the act defines insofar as relevant to the instant case as a strike "arising out of a controversy between two or more labor organizations as to which of them . . . should have the exclusive right to bargain collectively with an employer on behalf of his employees or any of them. . . ." (Lab. Code, § 1118.) Thus, a dispute under this part of the act occurs only when two or more labor organizations each claim an *exclusive right* to represent *the same employees*. (See *Seven Up etc. Co.* v. *Grocery etc. Union,* 40 Cal.2d 368, 372-373 [254 P.2d 544, 33 A.L.R.2d 327]; Aaron, *The California Jurisdictional Strike Act,* 27 So.Cal.L. Rev. 239, 240-241.) Where the labor organizations do not seek to bargain for the same employees it is elementary that no such dispute can be said to exist. ▉ In order to obtain preliminary injunctive relief, therefore, the existence of a "jurisdictional" strike must be tentatively established by the complaint and affidavits in the manner provided by section 527 of the Code of Civil Procedure. (*Voeltz* v. *Bakery etc. Union,* 40 Cal.2d 382, 386 [254 P.2d 553].)

▉▉ The plaintiff alleged that the independent was formed for the purpose of "dealing with Plaintiff concerning grievances, labor disputes, wages, hours of employment and conditions of work" and that a majority of plaintiff's employees are members thereof. It *does not* aver that the independent has attempted to become the exclusive bargaining agent for all, or any of the restaurant's employees and, as stated above, it appears that the independent had not submitted *any* proposals to plaintiff prior to the time of filing suit. It is consequently impossible to ascertain over which of plaintiff's employees the independent will seek exclusive bargaining rights. Regarding the union, the complaint alleged only that it sought a contract that would call for all of the restaurant's employees to become members thereof "upon the happening of certain conditions." As was previously indicated, the contract offered to plaintiff by the union established that the union was seeking at the time here in question to represent only those employees who were then its members or who would become so in the future. The "certain conditions," a majority of all of plaintiff's employees becoming members of the union, were not asserted to be either imminent or likely. Such a record does not establish that either the union or the independent was attempting to represent all of plaintiff's employees, or that they were seeking to represent any of the same employees.

Manifestly, therefore, the record does not sustain the finding of the trial court that there existed a ''jurisdictional'' dispute. The issuance of the preliminary injunction was thus erroneous. In view of the foregoing conclusion at which we have arrived other contentions advanced by appellants do not warrant consideration since a determination thereof would serve no purpose for guidance of the trial court in subsequent proceedings, if any, in this litigation.

For the foregoing reasons the order appealed from is reversed.

Gibson, C. J., Traynor, J., Peters, J., and Dooling, J., concurred.

SCHAUER, J., Dissenting.—In my opinion the verified complaint, declarations (which, as authorized by Code Civ. Proc., § 2015.5, were filed in lieu of the ''affidavits'' mentioned in Code Civ. Proc., § 527) and testimony presented a sufficient showing to support the trial court's determination that there was a ''jurisdictional strike'' as defined by the pertinent clause of Labor Code, section 1118,[1] and reversal of the order granting the preliminary injunction is an unwarranted invasion of the fact-finding province of the trial court and of its discretion as to the granting of a preliminary injunction.

The majority base their conclusion (*ante,* p. 465) that ''the record does not sustain the finding of the trial court that there existed a 'jurisdictional' dispute'' on the lack of any direct averment or testimony that the independent labor organization had asked plaintiff employer to recognize it as the exclusive bargaining agent of any or all of plaintiff's employes, and the lack of any such showing that defendant union asked recognition as the representative of any employes except those who were already members of such union except upon future conditions which, in the words of the majority, ''were not asserted to be either imminent or likely.'' It is my view that, to support the determination that there was a jurisdictional dispute, there is no need to show that the competing unions made direct, verbally expressed, conflicting demands upon the employer. Rather, I think, it belies the

[1]''. . . concerted interference with an employer's operation or business, arising out of a controversy between two . . . labor organizations as to which of them has or should have the exclusive right to bargain collectively with an employer on behalf of his employees or any of them . . .''

realities of union competition to say that the trier of fact could not determine that the concerted activity of defendant union was essentially "jurisdictional" in the following circumstances:

Discussions between representatives of defendant union and representatives of plaintiff employer began on September 11, 1958, before plaintiff corporation had commenced active operation as a restaurant. According to the uncontradicted averment of a business representative of the union, on September 16, 1958, he showed plaintiff's representatives a form of contract which had been signed by other restaurants in the area, but stated that the union would not sign this kind of contract with plaintiff because the union did not represent a majority of plaintiff's employes and sought to represent only its members; at this time three employes of plaintiff were members of defendant union.

As might be expected, there is considerable conflict between the declarations of union representatives and the declaration of the general manager of plaintiff as to what was said at their subsequent discussions. Among the averments of such declarations, the following are here pertinent: According to plaintiff's manager, he insisted that plaintiff would not sign a contract with the union unless a majority of plaintiff's employes wished plaintiff to do so. According to the union representatives, they made it clear to plaintiff that they "were not negotiating and . . . were not trying to negotiate for any employee who was not then a member of Local 535"; plaintiff's manager at first orally agreed to requested conditions of employment of members of defendant union but then refused to sign a contract; it was plaintiff's refusal to agree to any form of *"union security clause"*[2] acceptable to the union which caused the union to eventually terminate negotiations.

Plaintiff restaurant opened for business about September 24, 1958. Efforts to organize the independent began in October, 1958. Representatives of defendant union discussed the formation of an independent organization with employes of plaintiff who were not members of defendant union and (quite naturally) defendant's representatives opposed the formation of the independent. At the beginning of the meeting of plaintiff's employes about October 22, when a majority voted for formation of the independent, a representative of defendant

---

[2] Just what sorts of "union security clause" the representatives of the parties referred to in their declarations does not appear.

union was present and vigorously protesting. To what purpose was this protest if not to gain as members of defendant union the very employes who, because they preferred to elect their own representatives (who would be responsible to the members), were endeavoring to organize an independent union?

The purpose of the independent was to represent plaintiff's employes in bargaining with plaintiff, but the only evidence as to the carrying out of this purpose consists of the following averments: According to the declaration of a representative of defendant union who negotiated with plaintiff, on October 27, 1958, plaintiff's manager "informed me that a demand had been made upon him to sign an agreement with an independent union." According to the declaration of a waitress who was an officer of the independent union, such independent "advised Surrey Restaurants prior to November 12, 1958, of its desire to represent the employees of Surrey Restaurants and requested contract negotiations for a collective bargaining agreement to that end." This officer of the independent orally testified, however, that she had only "hearsay" knowledge of the facts stated in the foregoing averment, and that "we haven't gotten around to" presenting contract proposals to plaintiff.

Plaintiff had 34 employes. At the time of the meeting of about October 22, when formation of the independent was agreed upon by a majority of plaintiff's employes, 12 or 13 of the (nonagreeing) employes were members of defendant union. By November 12, 1958, at least 21 of plaintiff's employes were members of the independent.

On November 12, 1958, defendant union proposed and plaintiff refused to execute a form of contract which would have provided, among other things, that "The Employer hereby recognizes the [defendant] Union as the collective bargaining agent for all of his employees who are or become members in good standing of Local #535, employed in the classification listed in 'Schedule A' [which includes the various types of kitchen, dining room, and bar employes] . . . If at any time during the term of this agreement a majority of the employees of the employer employed in the classifications listed in 'Schedule A' become members of the [defendant] Union in good standing the parties agree that thereafter this agreement shall apply to all persons employed in the classifications listed in 'Schedule A', and that all such persons shall become and

remain members of the [defendant] Union in good standing as a condition of continued employment . . .''

Plaintiff's manager declared that he informed a representative of defendant union that he rejected the proposed contract because of its *"union security clause."*[3] Defendant union promptly began the picketing which the trial court found was a forbidden "jurisdictional strike."

In the foregoing state of the record the trial court could make the following determinations: When the defendant union began to picket, all those concerned knew that almost all of plaintiff's employes had been already organized, a majority by the independent and a minority by defendant union, and that each union sought to organize and to represent the same classes of workers in the same plant. The disagreements between the representatives of defendant union and the employes who organized the independent union included controversies as to eventual recognition as exclusive bargaining agent of all plaintiff's employes. Plaintiff's difficulty in reaching an agreement with defendant union centered around the proposed contract provision for such eventual recognition of the union and as soon as that difficulty came to a head defendant union began picketing and those employes of plaintiff who were members of defendant union went out on strike. Thus the trial court could infer from the circumstances, without direct evidence that a controversy as to recognition had been announced in words, that there was such a controversy and that the concerted activity of defendant, in the light of the climate of existing disputes, was essentially "jurisdictional" in the prohibited sense. The rules which ordinarily are accepted by reviewing courts as delimiting the respective fact-finding functions of such courts and trial courts are stated in my dissent in *Messner* v. *Journeymen Barbers etc. International Union* (1960), 53 Cal.2d 873, 890-891 [4 Cal. Rptr. 179, 351 P.2d 347], footnote 2, and need not be here repeated.

The breach of such rules, however, is accented here by the fact that the order appealed from is one of preliminary injunction. The granting or denial of such an injunction rests in the sound discretion of the trial judge and should not be disturbed in the absence of a showing that his discretion was abused. (*People* v. *Black's Food Store* (1940), 16 Cal.2d 59,

---

[3]See footnote 2, *supra.*

61 [4] [105 P.2d 361].) The preliminary injunction does not adjudicate the ultimate merits of the controversy but merely determines that the trial court, balancing the equities of the parties, has concluded that pending such ultimate adjudication the defendant should be restrained from doing the acts of which plaintiff complains. (*Kendall* v. *Foulks* (1919), 180 Cal. 171, 175 [5] [179 P. 886].) In a situation such as that here I see no abuse of discretion on the part of the trial court in concluding that more harm would be done to plaintiff by permitting defendant union to continue picketing than will be done to the union by restraining such picketing pending ultimate determination of its lawfulness.

For the reasons above stated I would affirm the order appealed from.

McComb, J., concurred.