[Civ. No. 46659. First Dist., Div. Three. Feb. 26, 1980.]

MARION J. WOODS, as Director, etc., Petitioner, v.
THE SUPERIOR COURT OF MONTEREY COUNTY, Respondent;
ANTHONY B. SMITH et al., Real Parties in Interest.

**COUNSEL**

George Deukmejian, Attorney General, Richard Arnold, Charleton Holland and Catherine Van Aken, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Sheridan H. Brown for Real Parties in Interest.

**OPINION**

**WHITE, P. J.**—In this writ proceeding we are called upon to decide what role the superior court should play in proceedings brought by the Director of the State Department of Social Services to enjoin operation of an unlicensed community care facility. ▮ We have determined that the superior court is vested with discretion to review the director's determination that a facility should be closed. However, in exercising that discretion the court should resolve all doubts in favor of protecting the persons served by the facility. In this case we cannot tell whether the trial court resolved all doubts in favor of protecting the youths. Therefore, we return the matter for redetermination by the superior court.

Real parties in interest, Smith's Home for Boys, Inc. (hereinafter SHB), and Anthony Smith, its president, operate a number of facilities in which they provide room, board, and 24-hour nonmedical care and supervision to boys between the ages of 10 and 18. The boys have been placed in the facilities by private agencies as well as by various state and local agencies, including the California Youth Authority and the State Department of Mental Health.

From April 1976 to April 1977, Smith held a license pursuant to Health and Safety Code section 1500 et seq., to care for six ambulatory, emotionally disturbed boys in a four-bedroom home in Marina,

California, in Monterey County. The Department of Social Services (formerly the Department of Health) granted this license with knowledge that Smith was operating other unlicensed facilities. Indeed, it seems to be a widespread practice in the area for such facilities to begin operation without a license and to later apply for licensing. Even the Department of Social Services and the Youth Authority placed boys in Smith's homes while they were operating without licenses.

During 1976 and 1977, Smith filed applications for licenses for six community care facilities. No license was sought for a seventh facility which is also the subject of this suit. All applications were denied in March 1978 for failure to comply with Health and Safety Code section 1520, which requires an applicant to show that he is of reputable and responsible character and capable of complying with the provisions of the California Community Care Facilities Act, Health and Safety Code section 1500 et seq. (hereinafter the Act), and regulations promulgated thereunder. Real parties in interest requested an administrative hearing to challenge the denial (Health & Saf. Code, § 1526).

While the administrative hearing was pending, petitioners, the Director of the Department of Social Services and the People of the State of California, filed a complaint for injunctive relief and a motion for preliminary injunction in the Monterey County Superior Court, seeking to enjoin operation of these seven facilities without licenses. The director's suit was brought under the authority of Health and Safety Code section 1541, and the People sued under Business and Professions Code section 17204, which authorizes the Attorney General to bring an action to enjoin unfair or fraudulent business practices.

In support of their motion for preliminary injunction, petitioners presented affidavits from nine former houseparents, some of them married couples, whose various periods of employment with Smith spanned from February 1976 to August 1978. The affidavits described overcrowding in many homes, frequent abandonment of children for three or four days at a time, habitual striking of children on the buttocks with a thick board, regular furnishing of beer and wine to children 10 to 18 years old leading to intoxication, violent slamming of children against walls and floors, and forcing of children to eat cigarettes. Various other forms of physical abuse were described in the affidavits. Declarations by a half dozen former placements corroborated most of the statements. A declaration by a couple not connected with SHB or Smith described

having seen an SHB houseparent slam a boy's head full force against a truck fender, choke him, and then fling him head first into the bed of the truck. A Department of Social Services employee who investigates complaints against community care facilities, swore that her numerous visits to Smith's homes in 1976 and 1977 confirmed complaints of overcrowding, inadequate nutrition, substandard sleeping accommodations and inadequate supervision.

In his own detailed affidavit, Anthony Smith denied all charges of improper conduct. He admitted that certain of the activities had taken place, but in each of those cases gave a more favorable interpretation of the actions or explained that his employees were responsible and that he had reprimanded them and written "incident reports" concerning the activities. Real parties presented the affidavit of a Solano County probation officer who told nine success stories of boys who had, in his opinion, learned greater self-control and cooperation, and who had grown in self-confidence through part-time jobs and academic achievement while at SHB. The affiant stated that he was favorably impressed on his more than six visits to SHB facilities and that he had never had any reports of physical abuse. Letters from former placements and their parents confirmed these statements, as did letters from an assemblyman and a judge, and affidavits from many placements and former placements. The homes' attending physician swore that the children were well nourished and showed no signs of physical abuse, except that on one occasion he noticed spank marks on the buttocks of a boy. A psychiatrist who had treated 30 of the placements expressed his favorable opinion of the facilities, noting that the majority of the boys he had treated expressed a preference for SHB over any other placement. A local high school principal and two former employees joined in the praise of Smith's care. Affidavits of two SHB employees who had been accused of child abuse denied the accusations.

The trial court denied petitioners' motion for preliminary injunction with the following statement of its reasons: "Numerous affidavits were submitted by both plaintiffs and defendants, which affidavits were conflicting as to factual issues. At a later date, upon the trial of the complaint seeking a permanent injunction, many of the affiants will probably personally appear as witnesses. At that time, after the witnesses have been examined and cross-examined there will be a better opportunity for the Court to determine the credibility of the witnesses. A preliminary injunction at this time would disrupt the lives of numerous residents and require the agencies involved to secure new

placements. It would also close down the defendants' placement homes on the eve of a 4 week hearing scheduled to start next week before the State of California (Department of Social Services), who will decide whether or not a license should be issued to the defendants."[1] The injunction was denied with the proviso that the defendants were restrained from opening any additional facilities without securing proper licenses.

■ Petitioners maintain that respondent court erred in refusing to enjoin the operation of SHB because petitioners were absolutely entitled to the injunction as a matter of right. They argue that Health and Safety Code section 1541, which empowers the director to bring an action to enjoin unlicensed operation of community care facilities without the need to show inadequacy of remedy at law or irreparable damage, absolutely entitles the director to an injunction upon a showing that facilities are being operated without a license. Petitioners also argue that the undisputed evidence shows unfair business practices which the Attorney General may enjoin in the name of the People pursuant to Business and Professions Code section 17204.

The Act, Health and Safety Code section 1500 et seq., was passed in 1973 in response to what the Legislature saw as "an urgent need to establish a coordinated and comprehensive statewide service system of quality community care for mentally ill, developmentally and physically disabled, and children and adults who require care or services." (Health & Saf. Code, § 1501.) The Act provides a licensing procedure for the operators of community care facilities, requiring prospective operators to furnish proof of reputable and responsible character and of ability to comply with Health and Safety Code provisions and regulations adopted pursuant thereto. (Health & Saf. Code, § 1520.) Regulations governing group homes for children require that placements be treated with dignity by staff members and prohibit the use of corporal or unusual punishment. (Cal. Admin. Code, tit. 22, § 80341, subds. (a)(1), (a)(3).)

A community care facility license expires after one year, but a renewal license may be issued for two years, provided the licensee has not

---

[1]The trial court's decision was rendered February 27, 1979. The administrative hearing was held between March 5 and March 23, 1979, but was then continued to August 1979 for three more weeks of hearing. This petition was filed after the hearing was interrupted. The hearing was finally completed on or about November 23, 1979, but the matter did not stand submitted until January 23, 1980.

been found in violation of any statutory requirements or rules or regulations (Health & Saf. Code, § 1524). One who is denied a license may petition for an administrative hearing (Health & Saf. Code, § 1526), but Health and Safety Code section 1508 provides that no one may "operate, establish, manage, conduct, or maintain a community care facility in this state, without first obtaining a license therefor."

Health and Safety Code section 1540 makes it a misdemeanor to violate any provisions of the Act or of the regulations promulgated thereunder. An additional remedy is provided by section 1541, which states: "The director may bring an action to enjoin the violation or threatened violation of Section 1508 in the superior court in and for the county in which the violation occurred or is about to occur. Any proceeding under the provisions of this section shall conform to the requirements of Chapter 3 (commencing with Section 525) of Title 7 of Part 2 of the Code of Civil Procedure, except that the director shall not be required to allege facts necessary to show or tending to show lack of adequate remedy at law or irreparable damage or loss. Upon a finding by the director that such violations threaten the health or safety of persons in, or served by, a community care facility, the agency contracted with pursuant to Section 1511 may bring an action to enjoin the violation, threatened violation, or continued violation by any community care facility which is located in an area for which it is responsible pursuant to the terms of the contract." (Added Stats. 1973, ch. 1203, § 4; amended Stats. 1974, ch. 545, § 45, ch. 1240, § 1, eff. Sept. 23, 1974.) Section 1511 authorizes the department to contract for other public agencies to assume licensing responsibilities under the Act. Code of Civil Procedure section 525 et seq. describe the procedures and conditions for issuing injunctions.

Petitioners argue that by exempting the director from the requirement of alleging facts to show irreparable damage or lack of an adequate legal remedy, the Legislature has created an automatic right to injunction against any community care facility operating without a license. They argue that the defense of laches raised by real parties cannot bar the director's action where the facility has been found unfit by the licensing agency.

In order to determine the meaning of Health and Safety Code section 1541 it is necessary to examine the general requirements for granting injunctions. Code of Civil Procedure section 526 provides that: "An injunction may be granted in the following cases:

"1. When it appears by the complaint that the plaintiff is entitled to the relief demanded, and such relief, or any part thereof, consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually;

"2. When it appears by the complaint or affidavits that the commission or continuance of some act during the litigation would produce waste, or great or irreparable injury, to a party to the action;

"3. When it appears, during the litigation, that a party to the action is doing, or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the rights of another party to the action respecting the subject of the action, and tending to render the judgment ineffectual;

"4. When pecuniary compensation would not afford adequate relief;

"5. Where it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief;

"6. Where the restraint is necessary to prevent a multiplicity of judicial proceedings;

"7. Where the obligation arises from a trust." While that section describes certain circumstances under which an injunction might be appropriate, it does not explain the nature of the inquiry made by the court in determining whether to grant or deny the injunction.

In *Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 528 [67 Cal.Rptr. 761, 439 P.2d 889], the California Supreme Court explained the preliminary injunction in the following terms: "'The granting or denial of a preliminary injunction does not amount to an adjudication of the ultimate rights in controversy. It merely determines that the court, balancing the respective equities of the parties, concludes that, pending a trial on the merits, the defendant should or that he should not be restrained from exercising the right claimed by him.' (*Miller & Lux* v. *Madera Canal etc. Co.* (1909) 155 Cal. 59, 62-63 [99 P. 502, 22 L.R.A. N.S. 391]; *Kendall* v. *Foulks* (1919) 180 Cal. 171, 174 [179 P. 886]; see *People* v. *Black's Food Store, supra*, 16 Cal.2d 59, 62 [105 P.2d 361]; *Bomberger* v. *McKelvey* (1950) 35 Cal.2d 607, 612-613 [220 P.2d 729]; *Cal-Dak Co.* v. *Sav-On Drugs, Inc.* (1953) 40 Cal.2d 492,

496 [254 P.2d 497]; *Surrey Restaurants* v. *Culinary Workers & Bartenders Union, supra*, 54 Cal.2d 461, 469 [6 Cal.Rptr. 18, 353 P.2d 730].) The general purpose of such an injunction is the preservation of the status quo until a final determination of the merits of the action. (*Stewart* v. *Superior Court* (1893) 100 Cal. 543, 545 [35 P. 156, 563]; *People* v. *Black's Food Store, supra*, 16 Cal.2d 59, 62.) Thus, the court examines all of the material before it in order to consider 'whether a greater injury will result to the defendant from granting the injunction than to the plaintiff from refusing it;...' (*Santa Cruz Fair Bldg. Assn.* v. *Grant* (1894) 104 Cal. 306, 308 [37 P. 1034]; see *Hicks* v. *Compton* (1861) 18 Cal. 206, 210; *Porter* v. *Jennings* (1891) 89 Cal. 440, 443-445 [26 P. 965]; *Lagunitas Water Co.* v. *Marin County Water Co.* (1912) 163 Cal. 332, 336 [125 P. 351]; *Wilms* v. *Hand* (1951) 101 Cal.App.2d 811, 815-816 [226 P.2d 728]; see also 27 Cal.Jur.2d, pp. 111-113; 1 High, *op. cit. supra*, § 4; 1 Joyce, *op. cit. supra*, § 109b.) In making that determination the court will consider the probability of the plaintiff's ultimately prevailing in the case and, it has been said, will deny a preliminary injunction unless there is a reasonable probability that plaintiff will be successful in the assertion of his rights. (See *Lagunitas Water Co.* v. *Marin County Water Co., supra*, 163 Cal. 332, 336-337; 1 Witkin, *op. cit. supra*, p. 867; 1 High, *op. cit. supra*, § 5; 1 Joyce, *op. cit. supra*, §§ 109-110; 1 Spelling, *op. cit. supra*, § 25; Rest. Torts, § 936, subd. (2).) As was said in *Family Record Plan, Inc.* v. *Mitchell* (1959) 172 Cal.App.2d 235, 242 [342 P.2d 10]. 'In the last analysis the trial court must determine which party is the more likely to be injured by the exercise of its discretion [citation] and it must then be exercised in favor of that party [citation].'"

Since an injunction is equitable in nature, two traditional hurdles have been placed before a party seeking such relief: the requirement that he show inadequacy of legal remedies, and the requirement that he be threatened with irreparable injury. (2 Witkin, Cal. Procedure (2d ed. 1971) Provisional Remedies, §§ 50-51, p. 1499.) Health and Safety Code section 1541 deletes these two requirements from the showing required of the Director of the Department of Social Services when he brings an action to enjoin violation of the Act. It does not follow that the other traditional elements of the court's inquiry have been abrogated.

Nothing in the wording of section 1541 suggests that the injunction must issue as a matter of right upon a showing that the facility in ques-

tion is being operated without a license. In fact, the section does not even address the court's obligation. It is couched in terms of the director's right to bring an action for an injunction. It makes the provisions of the Code of Civil Procedure applicable with the exception of the requirements for a showing of lack of adequate remedy at law or irreparable damage. It does not state that if he brings such an action "the injunction shall issue" or provide any similar mandate.

We note that the language of Health and Safety Code section 1541 which refers to the Code of Civil Procedure sections governing injunctions and which expresses the director's exemption from the requirement to show inadequacy of legal remedies and the threat of irreparable harm, has been repeated verbatim or nearly verbatim in a number of recently enacted statutes (none of which has been interpreted on this point). (See, e.g., Food & Agr. Code, §§ 18221, 18934, 20253, 23093, 43002; Bus. & Prof. Code, §§ 4394, 8658; Health & Saf. Code, §§ 442.10, 445, 1236, 1291, 1392, 1595.5, 26850, 28791.) In none of these statutes did the Legislature provide that the trial court *must* issue the injunction upon petition by the public agency showing violation of the section to be enforced.

Elsewhere in the code, the Legislature has shown its capacity for creating an absolute right to an injunction. In Labor Code section 3712, the Legislature provided that "[i]f the court...shall find that the defendant is conducting or operating a business...without the full compensation security required, [it] *shall* forthwith, and without continuance, issue an order restraining the...operation of said business...so long as such violation of social public policy shall continue." (Italics added.) We cannot read the language used in Health and Safety Code section 1541 as giving a similar absolute right to an injunction.[2]

While we find no absolute right to obtain an injunction against the operation of an unlicensed facility, we do read the legislation as ex-

---

[2]Were we to read the statute in the manner suggested by petitioners, we would be investing the director with absolute power over facilities operating without licenses. Those he sought to enjoin could be automatically enjoined, while those he wished to operate could operate. Such a situation would be particularly unjust in an industry where it is commonplace for facilities to open without licenses and where the licensing agency, apparently for reasons related to funding and manpower, follows a widespread practice of allowing unlicensed facilities to flourish and even grants licenses to operators with the knowledge that they operate other unlicensed facilities. Without clear direction from the Legislature we cannot accept such power in the director.

pressing a public interest in providing the Director of the Department of Social Services with a swift method for obtaining court assistance in closing facilities which threaten the health or safety of persons served. We read this legislative intent from the director's exemption from showing inadequate legal remedy and irreparable harm and from that part of the statute which discusses injunctive actions brought by agencies contracting with the department. The final sentence of section 1541 provides that "[u]pon a finding by the director that such violations threaten the health or safety of persons in, or served by, a community care facility, the [contracting] agency...may bring an action to enjoin the violation..." While that sentence does not directly apply to an injunctive suit brought by the director, it does suggest a public interest in using the injunctive process to protect the health and safety of persons served by community care facilities.

We are unable to tell precisely what considerations motivated the trial court to deny the preliminary injunction. We do note, however, that in addition to remarking about the advantages of deciding conflicting facts with live witnesses, the court mentioned the disruption to the residents and to the agencies which had placed them in the Smith facilities. The court seemed particularly impressed by the fact that the administrative hearing was due to start soon. We do not criticize the trial court for taking these factors into consideration. However, we wish to make plain that in our view the danger to the health and safety of persons served by the facility should be given paramount consideration in a trial court's decision whether to issue a preliminary injunction. The mere fact that there is a factual conflict and that such conflict may be resolved more easily by hearing witnesses than by reading affidavits should not prevent a preliminary injunction from issuing. Neither should the fact that an administrative hearing is set to begin (observe how drawn out the administrative process was in this case). Nor should the disruption to the placing agencies be given much consideration. Only if the trial court is reasonably assured that there is no imminent danger to the health and safety of the placements should it decline to grant the injunctive relief. In close cases, doubt should be resolved in favor of removing the placements from the potentially dangerous environment.[3]

---

[3]Though the inquiry will be the same regardless of whether the facility is seeking a license or is operating without even attempting to obtain a license, the trial court's determination should be made with close regard for this distinction between facilities. In cases where applications *have not been made* for new licenses or to renew expired licenses, only in the most extraordinary circumstances should the injunction be denied.

We cannot tell from the record what emphasis the trial court placed upon the health and safety of the boys placed in the Smith homes. However, because no prior appellate opinion has addressed this issue, we are concerned that due weight may not have been given to this consideration. For that reason, in an abundance of caution, we will issue the writ of mandate to vacate the trial court order denying injunctive relief. The matter may then be reconsidered in light of the views expressed herein, with presentation of whatever additional evidence has developed during the pendency of this writ proceeding.

Let peremptory writ of mandate issue directing the Monterey County Superior Court to vacate its order of February 27, 1979, denying injunctive relief, and to reconsider the request in light of the views expressed herein.[4]

Scott, J., and Feinberg, J., concurred.

A petition for a rehearing was denied March 27, 1980, and the opinion was modified to read as printed above. Petitioner's application for a hearing by the Supreme Court was denied April 30, 1980. Manuel, J., was of the opinion that the application should be granted.

---

An operator of a health care facility covered by the act should be presumed to present a danger to the placements and to the public if he or she is unwilling to seek governmental approval for the facility. Where the application *has been made*, no such presumption should operate against the applicant. However, a department determination to deny an application for health or safety reasons should be accorded great weight in determining whether operation should be enjoined during the administrative appeal. Moreover, if the department's decision is sustained in the administrative hearing, the injunction should issue as a matter of course unless the trial court determines that proper conditions for staying the department decision exist under the provisions of Code of Civil Procedure section 1094.5, subdivision (h).

[4] We have not addressed petitioners' contention that a right to injunctive relief was granted by Business and Professions Code section 17204. That section, applicable to injunctions against unfair competition and fraudulent business practices, if pertinent at all here, could certainly not give petitioners a stronger right to injunctive relief than has been given by Health and Safety Code section 1541. In light of that fact, full discussion of petitioners' contention is unnecessary.